United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 12, 2003**

Charles R. Fulbruge III
Clerk

Revised May 27, 2003

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

No. 02-40686

_____

BOBBY EVETT; CHRISTINA GEE; ANGELA GEE, Individually and in
behalf of BRANDON GEE, a Minor,

Plaintiffs-Appellees,

VERSUS

DETNTFF, ET AL,

Defendants

KENT GRAHAM, Nacogdoches County Sheriff; RAM MENDIOLA,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Eastern District of Texas

_____

Before DeMOSS and STEWART, Circuit Judges, and LITTLE, District
Judge.[1]

DeMOSS, Circuit Judge:

    Plaintiff-Appellee Bobby Evett ("Evett") filed a civil rights

action pursuant to 42 U.S.C. § 1983 against law enforcement

_____

[1]The Honorable F. A. Little, Jr., District Judge for the
Western District of Louisiana, sitting by designation.

1

officers Kent Graham ("Graham") and Ramiro Mendiola ("Mendiola") for unlawful arrest. Graham and Mendiola filed motions for summary judgment based upon qualified immunity, which the district court denied as a matter of law. We affirm in part and reverse in part.

## I. BACKGROUND & PROCEDURAL HISTORY

In August 2000, members of the Deep East Texas Regional Narcotics Trafficking Task Force ("Task Force"), a state and local funded task force comprised of officers of several law enforcement agencies, obtained and executed a search and arrest warrant at the home of Angela and Richard Gee, Sr. ("Gee premises"). As a result of the search, a large number of weapons and methamphetamine materials were found. Richard Gee, Sr. ("Gee, Sr."), and his son Richard Gee, Jr. ("Gee, Jr."), were arrested for possession of a controlled substance.

On January 25, 2001, more than 20 members of the Task Force executed a second search and arrest warrant for the Gee premises based on probable cause to believe that the Gees were continuing to manufacture and sell methamphetamine. Among the officers executing the warrant were Sergeant Graham and Lieutenant Mendiola, both from the Nacogdoches County Sheriff's Department. Graham and Mendiola were Task Force supervisors. Mendiola was the senior supervisor during the execution of this warrant. At the time of the raid, there were 14 non-law enforcement persons present at the Gee premises. Among those present were Gee, Sr. and his wife Angela

Gee; his son, Gee, Jr. and his girlfriend Tonya Jones, and their daughter Chelsea Gee; his son Brandon Gee; his daughter Christina Gee and her common law husband, Evett, and child Calley Evett; and a family friend, Angela Griffin ("Griffin").

Upon arriving at the Gee premises, members of the Task Force busted down the door with a battering ram, yelled at the occupants of the house to get down and kept their weapons aimed at the occupants until the premises was secured. Outside of the house, officers detained Evett and Brandon Gee at gun point as other officers secured the garage area. The raid lasted more than one hour and resulted in the arrest of Gee, Sr., Gee, Jr., Evett, and Griffin. There was no warrant for Evett's arrest, and ultimately no charges were filed against him.

Evett filed a civil rights complaint pursuant to 42 U.S.C. § 1983 against Graham and Mediola, among others, for unlawful arrest. In his complaint, Evett alleged that he and others were "terrorized" by law enforcement officers, among whom were Graham and Mendiola, who were conducting a raid on the premises. According to Evett, Mendiola was "the officer in charge" and was responsible for the supervision of all of the officers who participated in the raid. Evett asserted that Graham made the decision to arrest him for possession of a controlled substance with Mendiola's approval. Evett alleged that there were no outstanding warrants for his arrest and that Graham and Mendiola did not have probable cause to arrest him.

3

Graham and Mendiola pleaded qualified immunity as an affirmative defense in their answer to Evett's complaint. The district court ordered limited discovery on the facts relevant to the affirmative defense of qualified immunity. Subsequently, Graham and Mendiola filed a motion for summary judgment based upon qualified immunity.

In reviewing the evidence submitted by both parties on the issue of whether Graham had probable cause to arrest Evett, the district court noted that Graham submitted an affidavit and deposition testimony that drug residue and paraphernalia were located on the seat of Griffin's truck and that Graham received information that Evett had ridden in the truck with Griffin. The district court further noted that based on this information and the fact that both Griffin and Evett were at a "high-traffic clandestine methamphetamine lab," Graham testified that he believed that Evett was aware of the contraband in the truck and made the decision to arrest him.

According to the district court, however, Evett adduced evidence that he was told he would not be arrested unless there existed an outstanding warrant for his arrest. In addition, the court noted that Evett pointed to the testimony of Christina Gee to suggest that his arrest was not based on probable cause, but rather to "provide the proverbial slap in his father-in-law's face." According to the district court, "[r]ather than investigate and verify the accusation, Sergeant Graham made remarks in the house to

4

the effect of 'How is Daddy going to feel now? We're taking the daughter's husband.'" Further, the district court noted that the evidence showed that Graham arrested Evett after acting upon information he received "from an unsubstantiated source" who said Evett had ridden with Griffin in her truck where the contraband was found. However, according to the district court, the evidence indicated Evett told officers at the scene that he had never ridden in Griffin's truck.

The district court found that Evett's version of events was supported by the deposition testimony of officer Barry Vance ("Vance"), another law enforcement officer who participated in the raid. Vance, who is a member of the Lufkin Police Department, testified that he had searched Griffin's truck and questioned her, and that she told him she had come to the Gee premises by herself. Vance testified that he believed Griffin was being truthful with him. Vance also testified that he found methamphetamine and a hypodermic needle on the seat of Griffin's truck, but the hypodermic needle was in a closed opaque plastic makeup bag belonging to Griffin. The district court found that Vance had "conveyed this information to Sergeant Graham." The district court further noted that Graham stated in his deposition that Evett was released from jail the day after his arrest "for lack of probable cause because of the makeup bag," but that he could not remember whether Vance even talked to him about Griffin, or whether he knew about the makeup bag, before Evett's arrest.

5

Based on the evidence, the district court concluded:

> Viewing the facts in a light most favorable to Plaintiff and assuming *arguendo* that Sergeant Graham lacked probable cause to arrest Plaintiff Evett, the Court finds, for purposes of this motion, that Sergeant Graham indeed violated Evett's constitutional right. The law could not be more clear that an individual has a clearly established right to be free from unlawful arrest. Therefore, the question remaining in this analysis is whether Defendant's conduct was objectively reasonable for qualified immunity purposes. The Court presumes that defendants' facts are objectively reasonable unless all reasonable officials in the defendants' circumstances would have then known that the defendants' conduct violated [Plaintiff Evett's] constitutional right.

The district court found that Graham's actions were not objectively reasonable. The court noted that "other reasonable officials in Sergeant Graham's circumstances believed, at the time of the arrest, that he lacked probable cause to make an arrest." The court examined the parameters of probable cause, defining it as having "reasonably trustworthy information that would cause a prudent person to believe that the suspect had committed or was committing a crime." The court pointed out that Graham had based his belief that Evett knew about the drug paraphernalia in Griffin's truck on information received from an officer whose identity he could not remember, and that Graham admitted that he did not know "[w]hether I could prove it in a court of law," but had a "feeling" that Evett knew about the contraband. The district court determined that Graham should have investigated further Evett's connection with the items in Griffin's truck, finding that if Graham had done so, he would have learned from Vance, who had

6

questioned Griffin and searched her truck, that: (1) Griffin denied that Evett had been in her truck; (2) Vance believed that Griffin was telling the truth; and (3) the hypodermic needle was inside a closed makeup bag in Griffin's truck.

Furthermore, the district court found that Graham was not forced to make a "split-second decision" to arrest Evett. The court noted that the raid "lasted over an hour," giving Graham "plenty of time" to investigate further before making the arrest. The district court concluded that Graham lacked probable cause to arrest Evett and deemed Graham's failure to further investigate the facts related to Evett's connection with the controlled substance in Griffin's car to be objectively unreasonable. Consequently, the district court held that Graham was not entitled to the defense of qualified immunity as a matter of law on Evett's claim of unlawful arrest.

The district court then examined Evett's claims against Mendiola in his capacity as Graham's supervisor. The district court concluded that Evett had "little difficulty in establishing the existence of the causal connection between Defendant Mendiola, Sergeant Graham and the alleged unlawful arrest of Plaintiff Evett." The district court found that Evett had adduced sufficient evidence to support the following allegations with regard to Mendiola: (1) Mendiola was the highest-ranking officer at the scene of the raid, and the decisions made at the scene "were ultimately approved by him"; (2) Graham told Mendiola about his

decision to arrest Evett; and (3) Mendiola approved the decision to arrest Evett, based on the information that he received from Graham.

Having found that Evett established the causal connection from his arrest by Graham to Mendiola, the district court reasoned that "[t]he question then becomes did Defendant Mendiola, by action or inaction, act with deliberate indifference regarding the violation of Evett's constitutional rights." The district court answered that question in the affirmative, finding that Evett had presented evidence that Mendiola, "by acting as overall supervisor at the scene, personally took part in the events leading up to the arrest of Evett." The court further found that "the record is devoid of evidence" that Mendiola questioned other officers at the scene who had searched the truck or talked to Griffin. Rather, the district court noted, Mendiola admitted in his deposition that he approved Evett's arrest based only upon the information that he received from Graham. The district court, therefore, concluded:

> Qualified immunity is only available to Lieutenant Mendiola if all reasonable officers in his position would not have realized that the actions taken by Defendant Graham violated Evett's constitutional rights. The summary judgment evidence shows that other officers possessed information that called into question the actions of Sergeant Graham. The Court finds Lieutenant Mendiola's actions, and inaction under the circumstances presented, to be deliberately indifferent to the rights of Evett and objectively unreasonable so as to deny him the protection of qualified immunity.

Consequently, the district court denied summary judgment to Graham and Mendiola on Evett's unlawful arrest claim, concluding

8

that they were not entitled to the defense of qualified immunity as a matter of law. Graham and Mendiola filed a timely notice of interlocutory appeal.

## II. DISCUSSION

Before we can consider the issues of whether Graham and Mendiola are entitled to qualified immunity, we must determine whether this Court has jurisdiction over this interlocutory appeal. The district court's order denied Graham's and Mendiola's motions for summary judgment based on qualified immunity "as a matter of law." A denial of a motion for summary judgment on the basis of qualified immunity is subject to interlocutory appeal if the denial is based upon a question of law. *Kinney v. Weaver,* 301 F.3d 253, 262 (5th Cir. 2002). This Court, however, does not have jurisdiction to review the district court's determination that sufficient evidence existed to create a question of fact with respect to a material issue. *Lemoine v. New Horizons Ranch and Center, Inc.,* 174 F.3d 629, 633-34 (5th Cir. 1999). Nevertheless, the district court's determination that it cannot grant summary judgment because genuine issues of fact exist does not necessarily deprive this Court of jurisdiction. *Colston v. Barnhart,* 146 F.3d 282, 284 (5th Cir. 1998). This Court may review the district court's conclusion that those disputed issues are material to the issue of qualified immunity. *Lemoine,* 174 F.3d at 634. This Court does not apply the standards of Rule 56(c) of the Federal Rules of

9

Civil Procedure in this review, "because we do not determine whether the record establishes genuine factual issues." **Kinney,** 301 F.3d at 262. "[O]ur review of the district court's conclusions as to the materiality of the identified fact issues, a legal determination, is *de novo.*" **Lemoine,** 174 F.3d at 634.

Evett alleges that the officers arrested him without a warrant and without probable cause. Graham and Mendiola do not dispute the district court's factual findings, but, rather, they challenged the materiality of those findings to the district court's ruling that they are not entitled to qualified immunity as a matter of law. They argue that, based on the facts actually known to Graham, and conveyed to Mendiola by Graham, both officers had probable cause to arrest Evett, and both officers acted in an objectively reasonable manner in deciding to arrest Evett. Graham and Mendiola also argue that the district court should not have based its ruling on the facts known to other officers present at the raid, but not actually known to Graham and Mendiola at the time of the arrest. They take issue with the district court's failure to consider that the scene of the raid was chaotic, but do not dispute the district court's finding that the raid lasted over an hour, or the court's conclusion that Graham had time to investigate the facts further.

We find that a review of the existence of probable cause to arrest Evett, and the objective reasonableness of the actions and inactions of Graham and Mendiola in making that arrest, does not

10

necessitate a determination of disputed factual issues in this case. This Court, therefore, has jurisdiction to review the district court's denial of summary judgment. Specifically, this Court has jurisdiction to determine the materiality of the facts on which the district court based its determination that Graham lacked probable cause, given the facts actually known to Graham at the moment of the arrest. This Court also has jurisdiction to review the district court's finding that both Graham and Mendiola had a duty to investigate the facts more fully prior to Evett's arrest, as a matter of law. This Court, furthermore, may review the facts that the district court determined would have been discovered upon further investigation, and decide whether those facts are material to the determination of probable cause and objective reasonableness.

### A. Whether Graham is entitled to qualified immunity as a matter of law.

Government officials acting within their discretionary authority are immune from civil damages if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Mendenhall v. Riser,* 213 F.3d 226, 230 (5th Cir. 2000). This Court conducts a bifurcated analysis to assess whether a defendant is entitled to qualified immunity. *Harper v. Harris County, Tex.,* 21 F.3d 597, 600 (5th Cir. 1994). First, the plaintiff must allege the violation of a clearly established right. Here, Evett alleges a

11

violation of his Fourth Amendment guarantee against unreasonable searches and seizures resulting from a warrantless arrest without probable cause, which implicates the clearly established constitutional right. *Mangieri v. Clifton,* 29 F.3d 1012, 1016 (5th Cir. 1994). Second, the actions of the officer must be objectively reasonable under the circumstances, such that a reasonably competent officer would not have known his actions violated then-existing clearly established law. *Id.* The question of whether an official's conduct was objectively reasonable is a question of law, to be decided by this Court. *Id.*

The district court based its holding that Graham lacked probable cause to arrest Evett and that Graham's actions were not objectively reasonable on the findings of material fact that Graham did not further investigate Evett's connection with the items in Griffin's truck. The district court determined that the information that Vance possessed was material, on the grounds that Evett was released from detention the next day, the point at which Graham admits being certain that he was told about the makeup bag. In addition, Evett was not charged with a crime, and Graham admitted "with the benefit of hindsight" that he probably would not have arrested Evett had he not been so busy at the scene of the raid. Finally, the district court found it significant that the raid lasted more than one hour, giving Graham "plenty of time" to investigate further before making the arrest.

12

"Probable cause exists when the facts and circumstances within the arresting officer's personal knowledge, or of which he has reasonably trustworthy information, are sufficient to occasion a person of reasonable prudence to believe an offense has been committed." *Bigford v. Taylor,* 834 F.2d 1213, 1218 (5th Cir. 1988) (internal quotation marks omitted). Probable cause is determined on the basis of facts available to the officer at the time of the arrest, and an officer may be shielded from liability even if he "reasonably but mistakenly conclude[s] that probable cause is present." *Mangieri,* 29 F.3d at 1017 (internal quotation marks and citation omitted). Furthermore, probable cause may be supported by the collective knowledge of law enforcement personnel who communicate with each other prior to the arrest. *United States v. Clark,* 559 F.2d 420, 424 (5th Cir. 1977). We must stress, however, that while law enforcement personnel "may rely on the totality of facts available to them in establishing probable cause, they also may not disregard facts tending to dissipate probable cause." *Bigford,* 834 F.2d at 1218.

Having reviewed the record in this case, we agree with the district court that Graham lacked probable cause to arrest Evett. Officers acting reasonably and prudently, based on all of the available information at the time of the arrest, would not have arrested Evett without further investigation. As already noted, the district court's factual findings in this case are not disputed

13

by the parties.  The court found that Graham had information from an "unsubstantiated source," another officer participating in the raid, who told him that Evett had ridden in Griffin's truck where contraband was found.  This information was all Graham had to form a "feeling" that Evett knew about, and had something to do with, the drug paraphernalia in Griffin's truck.  Viewing the evidence in a light most favorable to Evett, we find that such a "feeling" based on the limited information that Graham had, is not enough to create probable cause to make an arrest.  Therefore, Evett's constitutional rights were violated.

We must now consider whether Graham's actions were objectively reasonable under the circumstances.  We note that "the probable cause standards for reasonableness differ from those for qualified immunity." *Whren v. Towe,* 130 F.3d 1154, 1160 (5th Cir. 1997).  In this part of the analysis, we are no longer concerned with the fact that there was no probable cause for Evett's arrest.  That mistake alone cannot open Graham to liability.  "Law enforcement officers are only human, and these mistakes alone do not open officers to personal liability." *Id.* at 1159.  Rather, we must look to the facts to determine whether a reasonably competent officer in Graham's position could reasonably have thought his actions to be consistent with the rights he is alleged to have violated.  *Id.*

We agree with the district court that under the circumstances of this case, Graham is not entitled to qualified immunity.  First,

14

this is not a situation in which we must be concerned with second-guessing an officer's decision that was required to be made in a split second. As the district court noted, both parties agree that the raid lasted over an hour.

Second, as already discussed, the only information that Graham had concerning Evett was from an unidentified officer who told him that Evett arrived at the scene with Griffin. Graham had nothing further to support his "feeling" that Evett knew about or had anything to do with the drug paraphernalia in the truck. Nevertheless, based solely on that information, Graham arrested Evett.

We cannot conclude that based on such minuscule information in an unhurried setting such as in this case, that arresting Evett was objectively reasonable. As the district court stressed, a reasonable officer would have investigated further. Graham easily could have sought out Officer Vance who had questioned Griffin and searched her truck. Had Graham done so, he would have learned that Griffin told Vance that Evett had not ridden in her truck, that Vance believed Griffin was telling the truth about Evett not having been in the truck, and that the hypodermic needle was in a closed opaque plastic makeup bag belonging to Griffin. Therefore, we affirm the district court and hold that Graham is not entitled to qualified immunity as a matter of law.

**B. Whether Mendiola is entitled to qualified immunity as a matter**

15

*of law.*

The issue of whether a supervisor may be held liable under 42 U.S.C. § 1983 requires a separate analysis than that applied above. Section 1983 does not create vicarious or *respondeat superior* liability. *Monell v. New York City Dep't of Soc. Servs.,* 436 U.S. 658, 691 (1978); *Thompkins v. Belt,* 828 F.2d 298, 303-04 (5th Cir. 1987). Rather, a plaintiff must show either the supervisor personally was involved in the constitutional violation or that there is a "sufficient causal connection" between the supervisor's conduct and the constitutional violation. *Thompkins,* 828 F.2d at 304; *see also Southard v. Texas Bd. of Criminal Justice,* 114 F.3d 539, 550 (5th Cir. 1997) ("[T]he misconduct of the subordinate must be affirmatively linked to the action or inaction of the supervisor."). A supervisory official is held to a standard of "deliberate indifference," which requires proof that the supervisor "disregarded a known or obvious consequence of his action." *Southard,* 114 F.3d at 551 (internal quotation marks omitted). A supervisor will not be held liable for unintentional oversights. *Id.*

With regard to Evett's claim against Mendiola in his capacity as supervisor, the district court based its denial of summary judgment on the findings of material facts that Mendiola was the highest-ranking officer at the raid; that Graham told Mendiola he

was going to arrest Evett; and that Mendiola approved the arrest, based on the information that he received from Graham. The district court also found that Mendiola personally took part in the events that led to the arrest of Evett by acting as overall supervisor. As a result, the district court concluded that Mendiola had acted with deliberate indifference concerning Evett's constitutional rights because Mendiola did not question other officers who were involved in searching Griffin's truck or questioning her, and that those officers "possessed information that called into question the actions of Sergeant Graham."

We cannot agree with the district court's conclusion that Mendiola is not entitled to qualified immunity. The district court found that "the evidence does not show that Defendant Mendiola personally participated in the execution of the search warrant." The district court also found that "Graham testified that he, and not Lieutenant Mendiola, remained the officer in charge of the raid and made the decision to arrest Evett." The court further found that although Mendiola was appraised of Graham's decision to arrest Evett, Graham's conversation with Mendiola about this decision "was not detailed and, in fact, very brief."

We believe that, based on the facts of this case, requiring Mendiola, as the supervising officer at the scene of the raid, to personally seek out all available information from all participating law enforcement officers before approving an arrest

17

would not have been practicable. As a result, we find that Mendiola did not act with deliberate indifference by ultimately giving his approval of Evett's arrest. As noted above, Mendiola cannot be held liable for unintentional oversights; particularly when the evidence indicates Mendiola could not have consciously believed his actions, based on the information made available to him, would lead to a violation of Evett's constitutional rights. We, therefore, reverse the district court and hold that Mendiola is entitled to qualified immunity as a matter of law.

## CONCLUSION

Based on the foregoing, we AFFIRM the district court as to its ruling that Graham is not entitled to qualified immunity as a matter of law. We, however, REVERSE the district court as to its ruling that Mendiola was not entitled to qualified immunity as a matter of law. Mendiola, as a supervisor, did not act with deliberate indifference to Evett's constitutionally protected rights.

**AFFIRMED** in part, and **REVERSED** in part, and **REMANDED** for further proceedings consistent with this opinion.

Judge Stewart joins in the judgment only.

18