United States Court of Appeals
Fifth Circuit

**F I L E D**

May 10, 2004

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

---

No. 03-60079

---

ANTHONY GLIATTA,

Plaintiff-Appellee,

versus

TERRY JONES; ET AL.,

Defendants,

TERRY JONES, Individually and in his Official Capacity,

Defendant-Appellant.

---

**Appeal from the United States District Court
for the Northern District of Mississippi
(1:01-CV-253-M-D)**

---

Before DAVIS, BARKSDALE, and PRADO, Circuit Judges.

PER CURIAM:[*]

Terry Jones' interlocutory appeal from a summary judgment denial of qualified immunity against Anthony Gliatta's Fourth Amendment claim (arrest without probable cause) includes Gliatta's challenge to our jurisdiction. Because the undisputed material evidence establishes entitlement to immunity, we have jurisdiction; **VACATE** the immunity-denial; and **RENDER** judgment for Jones in his individual capacity.

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

I.

This interlocutory appeal being from a summary judgment ruling, we view the facts in the light most favorable to Gliatta, the non-movant. *E.g.,* **Nerren v. Livingtston Police Dep't**, 86 F.3d 469, 470 (5th Cir. 1996). On 14 August 1998, Gliatta left the house he shared with Pamela Reed and their infant son, Brandon, in Lee County, Mississippi. Upon his return the next evening (15 August), Reed and Brandon were absent. According to Gliatta, he was not concerned because Reed often left for several days at a time.

On 17 August, Reed and Brandon were reported missing by Reed's cousin; they had last been seen the afternoon of 15 August. On 19 August, Lee County Sheriff's Deputies found Reed's and Brandon's bodies in a local lake and arrested Charles Walters for murder, based upon incriminating statements Walters made to, and as reported to the Sheriff's Department by, Walters' brother. While in custody, Walters gave several statements to the Sheriff's Department concerning the murders, one of which detailed how his friend Gliatta had committed them in Walters' presence.

After Reed and Brandon were reported missing, Gliatta had cooperated with the investigation by the Sheriff's Department. On 19 August, the day the bodies were found and Walters was arrested, Gliatta took a polygraph examination, which indicated he was not being truthful when he answered that, *inter alia*: Reed was alive

2

the last time he saw her; and he did not cause the disappearance of Reed and Brandon. Based primarily on Walters' statement implicating Gliatta and the results of Gliatta's polygraph examination, Jones arrested Gliatta, without a warrant, on 20 August. Gliatta and Walters were charged with the murders of Reed and Brandon.

On 21 August, a justice court judge issued a warrant for Gliatta's arrest, conducted an initial appearance, and set bond. Gliatta did not post bond; he remained in custody for more than five months until a grand jury indicted only Walters for the murders.

Claiming he was arrested without probable cause, in violation of the Fourth Amendment, Gliatta filed this 42 U.S.C. § 1983 action against, among others, Jones (individual and official capacities) and the Sheriff's Department. Defendants moved for summary judgment on the merits; Jones claimed qualified immunity for the individual capacity claim against him.

The district court treated this action as raising three claims: (1) arrest without probable cause; (2) failure to investigate alibi witnesses; and (3) evidence tampering. Concluding there were genuine issues of material fact, it denied summary judgment.

## II.

The complaint indicates Gliatta raised several claims; but, at oral argument here, he stated that he presents only a probable

cause claim:  for arrest *and continuing detention* without probable cause.  Failure to release Gliatta after probable cause dissipated (failure to release claim) is a separate claim with legal standards distinct from one for arrest without probable cause.

Gliatta did not adequately assert his failure to release claim until oral argument.  (In his appellate brief, he made only passing reference to continuing detention.  The separate claim was not adequately briefed.)  Generally, for obvious reasons, we do not address claims raised in this fashion.  We decline to do so in this instance.  Likewise, we do not consider Jones' contention, raised for the first time on appeal, that he is entitled to qualified immunity based on the intervening decision of the justice court judge, after Gliatta had already been arrested, to issue a warrant for Gliatta's arrest.

A.

Although we do not generally have jurisdiction to review the denial of summary judgment, a denial of qualified immunity in such a proceeding is immediately appealable if based on an issue of law. *E.g., **Mitchell v. Forsyth***, 472 U.S. 511, 530 (1985).  Gliatta maintains we lack jurisdiction because factual issues are in dispute.  The district court's concluding there are material fact issues does not necessarily deprive us of jurisdiction; we review whether those identified fact issues are *material* to qualified immunity.  *See, e.g., **Evett v. DETNFF***, 330 F.3d 681, 686 (5th Cir.

4

2003); ***Lemoine v. New Horizons Ranch and Center, Inc.***, 174 F.3d 629, 633-34 (5th Cir. 1999).  We review *de novo* the district court's legal conclusions as to the materiality of the identified fact issues.  ***Evett***, 330 F.3d at 687 (citing ***Lemoine***, 174 F.3d at 634).

For the only claim at issue, arrest without probable cause claim, the only disputed issue of fact identified by the district court was whether, before Jones arrested Gliatta, an assistant district attorney advised Jones that probable cause did not exist to do so.  The existence *vel non* of probable cause, however, is an objective inquiry, decided by the courts without regard to the subjective beliefs of law enforcement officers.  *E.g.,* ***Whren v. United States***, 517 U.S. 806, 813 (1996); ***Craig v. Singletary***, 127 F.3d 1030, 1042 (11th Cir. 1997), *cert. denied*, 523 U.S. 1031 (1998).  Therefore, Jones' belief about probable cause as a result of his conversation with the assistant district attorney is not material.

Further, Gliatta does not point to any disputed facts that would preclude our jurisdiction, nor are any revealed by our review of the summary judgment record.  Gliatta asserts that Jones made deliberate attempts to implicate him and urged Walters to make statements incriminating him; but, no summary judgment evidence supports such assertions.

5

The *material* facts for the arrest without probable cause claim are not in dispute. Accordingly, we have jurisdiction over this interlocutory appeal.

B.

Law enforcement officers, like other government officials acting within their discretionary authority, are immune, in their individual capacity, from civil liability if their conduct does not violate clearly established rights of which a reasonable person would have known. *See Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982); *Evett*, 330 F.3d at 687. When a defendant claims qualified immunity, the plaintiff has the burden to demonstrate its inapplicability. *E.g., McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc).

To defeat qualified immunity, a plaintiff must satisfy a well-established, two-prong test. First, he must assert the violation of a clearly established constitutional right; second, he must demonstrate that, at the time of the claimed violation, the officer's conduct was objectively unreasonable in the light of then clearly established law. *E.g., Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743, 753 (5th Cir. 2001) (citing *Chiu v. Plano Indep. Sch. Dist.*, 260 F.3d 330, 343 (5th Cir. 2001)).

Concerning the first prong, the right to be free from arrest without probable cause by a state official is a clearly established constitutional right secured by the Fourth, through the Fourteenth,

6

Amendment. *E.g., **Sorenson v. Ferrie***, 134 F.3d 325, 328 (5th Cir. 1998). Along this line, "[p]robable cause exists when the facts available at the time of the arrest would support a *reasonable* person's belief that an offense has been, or is being, committed and that the individual arrested is the guilty party". ***Blackwell v. Barton***, 34 F.3d 298, 303 (5th Cir. 1994) (emphasis added). Probable cause is determined on the basis of facts available to the officer *at the time of the arrest* and may be supported by the collective knowledge of law enforcement personnel who communicate with each other prior to the arrest. ***Evett***, 330 F.3d at 688. Although officers may rely on the totality of facts available to them for probable cause, "they also may not disregard facts tending to dissipate probable cause". ***Id***. (quoting ***Bigford v. Taylor***, 834 F.2d 1213, 1218 (5th Cir.), *cert. denied*, 488 U.S. 851 (1988)).

Because Gliatta satisfies the first prong for testing qualified immunity, Jones' entitlement *vel non* to such immunity turns on the second prong — whether his conduct was *objectively unreasonable* in the light of then clearly established law. The reasonableness standard for qualified immunity differs from that for probable cause. ***Evett***, 330 F.3d at 688 (quoting ***Wren v. Towe***, 130 F.3d 1154, 1160 (5th Cir. 1997)). For qualified immunity, the test is "whether a reasonably competent officer in [the defendant's] position could *reasonably have thought* his actions to

be consistent with the rights he is alleged to have violated". *Id*. (emphasis added).

Therefore, if an officer has *arguable* probable cause to arrest, he is entitled to qualified immunity. **Brown v. Lyford**, 243 F.3d 185, 190 (5th Cir. 2001). In sum, "[a]n officer's entitlement to qualified immunity based on probable cause is difficult for a plaintiff to disturb". **Morris**, 277 F.3d at 753 (citing **Brown**, 243 F.3d at 190, n.7).

1.

Gliatta was arrested at 4:00 p.m. on 20 August. By that time, Walters had made several statements to the Sheriff's Department. In the first, made very early that day (12:50 a.m.): Walters admitted visiting Reed and Brandon at Reed's home on 15 August and leaving around 2:00 or 2:30 p.m.; he next remembered waking up at a lake and finding Reed's and Brandon's floating bodies, before going to his sister's house and telling her and his brother-in-law that he had just killed Reed and Brandon. (Almost two years later, concerning this 20 August early morning time period, Jones described a meeting with Walters then, during which Walters had told Jones that he had "killed the woman and the baby and ... wanted to go straight to prison and die". Gliatta suggests that Jones attempted to conceal this statement from other Deputies; but, even if true, such concealment is irrelevant because we are

examining probable cause based on information known to Jones at the time of Gliatta's arrest much later that day.)

Walters gave another statement at 10:40 a.m. on 20 August:  he had taken Gliatta to a pay telephone on 16 August (the day after Reed was last seen alive) to call a woman (Criddle); and Gliatta had told her to come to his house, "the Bitch [Reed] would not be back".

Walters gave his most detailed statement at 2:50 p.m. on 20 August:  he went to Reed and Gliatta's house on 15 August to meet Gliatta; he left in Gliatta's truck with Gliatta, Reed, and Brandon and drove to the lake; during the drive, Reed and Gliatta were arguing about Criddle (according to Walters' above described earlier statement, Criddle was the woman Gliatta telephoned the next day (16 August)); Gliatta stopped the truck at the lake and everyone exited; Walters observed a baseball bat in the back of the truck, heard Gliatta and Reed arguing, and then heard a "clinging noise", followed by Reed saying "Oh, Anthony"; Walters turned to see Gliatta with the bat in his hand and Reed on the ground, before seeing Gliatta throw Brandon into the lake; Walters saw Reed's body in the lake before he drove away; and, the next day, when he returned to the lake to "see if it [had] really happened", he again saw Reed's and Brandon's bodies in the lake.

Gliatta claims Walters' last statement implicating Gliatta cannot support probable cause because it is incredible on its face.

9

*See, e.g.,* ***United States v. Booker***, 334 F.3d 406, 410 (5th Cir. 2003) (defendant may be convicted on basis of uncorroborated testimony of co-conspirator, even one who has accepted plea bargain, unless testimony legally incredible); ***United States v. Posada-Rios***, 158 F.3d 832, 861 (5th Cir. 1998) (well settled that uncorroborated testimony of accomplice sufficient to support conviction unless insubstantial on its face). *See also* ***Craig***, 127 F.3d at 1044 (Eleventh Circuit; uncorroborated testimony of co-conspirator or accomplice sufficient to support conviction if not incredible on its face or otherwise insubstantial; by extension, testimony held sufficient to establish probable cause, ***id***. at 1045).

According to Gliatta, Walters' statement implicating him is incredible on its face because: Walters had unequivocally confessed in a previous statement; Walters had confessed to family members; and Jones should have known the statement was suspicious because Walters had changed his story several times. Walters' implication of Gliatta is *not* incredible on its face. It is internally consistent and a detailed account of riding with Gliatta to the lake, hearing Gliatta hit Reed with a bat, and then seeing Gliatta throw Brandon into the lake. Nothing within the statement suggests that the events could not have happened as Walters described. Moreover, the statement incriminated Walters by revealing he was at the crime scene, which supports reliability.

10

On the other hand, Gliatta is correct that Walters' earlier statement claiming sole responsibility for the murders undercuts the reliability of this later statement about Gliatta. Accordingly, we will assume that the later statement was not sufficient, in itself, to establish the requisite *arguable* probable cause.

2.

Notwithstanding our assumption that Walters' later statement is not alone sufficient for the requisite *arguable* probable cause, the totality of the facts known to Jones at the time of arrest are. Most significantly, Gliatta's 19 August polygraph examination (before the bodies were discovered) indicates his possible involvement. That examination strongly indicated deception when Gliatta responded affirmatively that Reed was alive when he last saw her. It further indicated deception when Gliatta answered that: he had not seen Reed since 14 August (the day before she was last seen alive); he was not withholding any information concerning her and Brandon's disappearance; and he did not cause it.

Polygraph examination results may be considered for determining probable cause. *See **Bennett v. City of Grand Prairie**, 883 F.2d 400, 405-06 (5th Cir. 1989) (holding magistrates may consider polygraph results when determining whether probable cause exists for arrest warrant). Therefore, for qualified immunity

11

purposes, Gliatta's answers to the polygraph examination support the requisite *arguable* probable cause to arrest.

3.

Additional evidence supports *arguable* probable cause. Although Gliatta lived with Reed and Brandon, he never reported them missing. The missing persons report by Dykes (Reed's cousin) stated: Reed's automobile, her purse, and Brandon's clothes and diaper bag were left at the house; and Gliatta seemed unconcerned about Reed's and Brandon's disappearance. Accepting as true that Reed often left home for days at a time, the factual circumstances surrounding Reed's absence on this occasion suggest something other than voluntary departure; and Gliatta's failure to report it supports *arguable* probable cause.

Further, Gliatta made contradictory statements concerning whether he and Reed had argued the night of 14 August, the last time Gliatta claimed to have seen her alive. Dykes reported that Gliatta told her that he and Reed had argued, but Gliatta told Deputies they had not done so. Because Dykes' report indicated Gliatta admitted he had argued with Reed, it was reasonable to suspect he was lying when he said they had not. This supports probable cause. *E.g., **United States v. Howard***, 991 F.2d 195, 202 (5th Cir.), *cert. denied*, 510 U.S. 949 (1993) (stating that lies to police established probable cause to search vehicle).

12

Lastly, on 19 August, the Sheriff's Department received a telephone call from a meter-reader who had been at Gliatta and Reed's house on 15 August and had spoken to Reed. The meter-reader stated that Reed told him that her boyfriend had left to retrieve a truck that was stuck in the mud. This suggests Gliatta was with Reed during the day of 15 August, thereby giving him an opportunity to commit the murders and supporting *arguable* probable cause for his arrest.

Gliatta contests probable cause by claiming the evidence relied upon by Jones was speculative and by supplying explanations for it, including: Gliatta did not report Reed missing because she frequently left home for days at a time; Gliatta cooperated with the Sheriff's Department and showed his concern for Reed's and Brandon's whereabouts during the investigation; and Reed's statement to the meter-reader about Gliatta only being temporarily absent could have been made because she was afraid to be alone with the meter-reader. Probable cause *vel non* is based on the totality of the circumstances, *see* **Glenn v. City of Tyler**, 242 F.3d 307, 313 (5th Cir. 2001); Gliatta's contentions that there are innocent explanations for the suspicious circumstances of Reed's and Brandon's disappearance do not negate *arguable* probable cause.

In sum, the totality of the circumstances (Walters' statements; Gliatta's polygraph examination; his failure to report Reed and Brandon missing; his inconsistent statements about whether

13

he had argued with Reed on the last night he claimed he saw her; and the meter-reader's statement) establish that it was *not objectively unreasonable* for Jones to believe probable cause existed to arrest Gliatta. Even "if officers of reasonable competence could disagree on [probable cause], immunity should be recognized". **Hart v. O'Brien**, 127 F.3d 424, 445 (5th Cir. 1997) (quoting **Malley v. Briggs**, 475 U.S. 335, 341 (1986)). Therefore, Jones is entitled to qualified immunity against the arrest without probable cause claim.

## III.

For the foregoing reasons, the denial of qualified immunity for Jones is **VACATED;** judgment is **RENDERED** for him in his individual capacity.

*VACATED and RENDERED*

14