**David SNOW, Plaintiff,**

v.

**The CITY OF EL PASO, TEXAS, et al., Defendants.**

**No. EP–04–CA–460–PRM.**

United States District Court,
W.D. Texas,
El Paso Division.

April 4, 2006.

William A. Elias, El Paso, TX, for Plaintiff.

*ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT*

MARTINEZ, District Judge.

On this day, the Court considered: (1) Defendants the City of El Paso and Chief of Police Richard Wiles's ("Defendants") "Motion for Summary Judgment" ("Motion"), filed on October 7, 2005; (2) Plaintiff David Snow's ("Plaintiff") "Opposition and Response to the Motion for Summary Judgment Filed by Defendant City of El Paso and Defendant Chief of Police Richard Wiles" ("Response"), filed on December 20, 2005 in the above-captioned cause. After due consideration, the Court is of the opinion that Defendants' Motion should be granted for the reasons set forth below.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff alleges that on October 16, 2004 Officers Torres and Cisneros responded to a call to the Briar Patch Bar in El Paso,

Texas regarding an individual breaking a window. Pl.'s Compl. ¶ 12. Plaintiff alleges that Officer Torres chased Plaintiff on foot, while Officer Cisneros remained in the patrol car. Pl.'s Compl. ¶ 15. There is a factual dispute about how Plaintiff ended up on the ground, with Plaintiff contending that he voluntarily laid himself down and Defendants asserting that Plaintiff fell or collapsed to the ground. Pl.'s Compl. ¶ 16. There is also a factual dispute concerning how Plaintiff sustained his injuries. Plaintiff maintains that Defendants used excessive force in effecting his arrest, thereby fracturing his neck, jaw, and rib cage as well as injuring his head and ear in violation of Plaintiff's constitutional rights. Pl.'s Compl. ¶¶ 17–18. Defendants contend that Plaintiff's injuries occurred when Plaintiff fell to the ground or prior to his arrest. Pl.'s Resp. ¶ 27. On December 13, 2004, Plaintiff filed a complaint in federal court claiming civil rights violations under the Fourth and Fourteenth Amendments of the United States Constitution as well as 42 U.S.C. § 1983. Pl.'s Compl.

On October 7, 2005, Defendants filed the Motion now before the Court wherein Defendants contend that Officers Torres and Cisneros did not act negligently in effecting Plaintiff's arrest. Defs.' Mot. ¶ 17. Defendants further maintain that, even if the officers acted wrongfully, Plaintiff has failed to produce evidence that a municipal policy or custom caused Plaintiff's injuries. Defs.' Mot. ¶ 17. Furthermore, Richard Wiles, in his individual capacity ("Wiles"), alleges that there is no genuine issue of material fact regarding his defense of qualified immunity. Defs.' Mot. ¶¶ 18–19. On December 20, 2005, Plaintiff filed his Response maintaining that a genuine issue of material fact exists regarding whether customs, policies, or practices promulgated by Defendants were a moving force behind Plaintiff's constitutional deprivations. Pl.'s Resp. ¶ 1. Plaintiff further contends that the Court should deny Wiles qualified immunity due to his toleration of the use of excessive force, or in the alternative, pursuant to Local Rule CV–12. Pl.'s Resp. ¶ 36.

## II. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) mandates summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party seeking summary judgment bears the initial burden of informing the court of the basis for his motion and identifying the parts of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Although the movant must " 'demonstrate the absence of a genuine issue of material fact,' [it] need not *negate* the elements of the non-movant's case." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548). A fact is "material" if its resolution in favor of one party might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute about a material fact is "genuine" if the evidence indicates that a reasonable fact-finder could find in favor of the non-moving party. *Id.*

Because the moving party has the burden of proof, evidence is construed in favor of the non-movant, and the non-movant is given the benefit of all favorable inferences. *Reid v. State Farm Mut. Auto. Ins. Co.,* 784 F.2d 577, 578 (5th Cir.1986). When the moving party has properly supported its summary judgment motion, the

non-moving party must come forward with "significant probative evidence" showing that there is an issue regarding material facts. *Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 114 (5th Cir.1978). If the movant satisfies his initial burden, the non-movant must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citing FED. R. CIV. P. 56(e)). In other words, "the non-movant must adduce evidence which creates a material fact issue concerning each of the essential elements of its case for which it will bear the burden of proof at trial." *Abbott v. Equity Group, Inc.*, 2 F.3d 613, 619 (5th Cir.1993). A court must resolve factual controversies or disputes in the non-movant's favor, but "only when there is an *actual* controversy, that is, when both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075 (emphasis added). A court should not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *Id.* (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)).

The non-movant must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file," identify those facts establishing a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548 (internal quotations omitted). "This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions,

or by only a scintilla of evidence." *Little*, 37 F.3d at 1075 (internal quotations and citations omitted). Likewise, "some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247–48, 106 S.Ct. 2505 (emphasis omitted). The non-movant "is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir.1998).

## III. APPLICATION

### A. Municipal Liability–City of El Paso & Richard Wiles in his Official Capacity [1]

Title 42 U.S.C. § 1983 (" § 1983") provides in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

"[M]unicipal liability under § 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving

---

1. Plaintiff named Chief of Police Richard Wiles both individually and officially. A claim against a public servant in his official capacity is tantamount to a claim against the entity that the public servant represents. *Turner v. Houma Mun. Fire & Police Civil Serv. Bd.*, 229 F.3d 478, 483 (5th Cir.2000); *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658,

691 n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (noting that "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent"). Therefore, the Court considers Plaintiff's claims against Richard Wiles in his official capacity to be repetitive of his claim against the City of El Paso ("City").

force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir.2001) (citing *Monell*, 436 U.S. at 694, 98 S.Ct. 2018). A court will not hold a municipality liable for the constitutional violations of its employees under a theory of *respondeat superior*. *Id.; see City of Canton, Ohio v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) (noting that § 1983 liability attaches "only where that municipality *itself* causes the constitutional violation at issue"). "Consequently, the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." *Piotrowski*, 237 F.3d at 578. In other words, "there must be both municipal culpability and causation." *Id.* at 578 n. 17.

 With respect to the second element, there are several methods for establishing municipal liability under § 1983. A plaintiff may demonstrate municipal liability based on: (1) a formally adopted municipal policy; (2) an informal custom or practice; (3) a custom or policy of inadequate training, supervision, discipline, screening, or hiring; or (4) a single act by an official with final policymaking authority. *See Monell*, 436 U.S. at 694, 98 S.Ct. 2018 (establishing that § 1983 municipal liability may be based on an officially adopted and promulgated policy); *Johnson v. Moore, III*, 958 F.2d 92, 94 (5th Cir.1992) (noting that municipal liability may be founded on a persistent or widespread practice of which actual or constructive knowledge is attributable to the policymaking authority); *City of Canton*, 489 U.S. at 385–87, 109 S.Ct. 1197 (providing that inadequacy of training may serve as a basis for municipal liability where the failure to train

amounts to deliberate indifference to the rights of persons); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (establishing that isolated actions or decisions by a municipal policymaker with "final policymaking authority" may create municipal liability).

In this case, Plaintiff's identification of the City's violative policies or customs is not the model of clarity.[2] Construing Plaintiff's complaint and Response together, the Court understands Plaintiff to complain that the City maintained the following policies: (1) failure to adequately train its officers; (2) failure to adequately supervise its officers; (3) failure to adequately discipline its officers; (4) failure to properly investigate unlawful police conduct; and (5) failure to adopt official policies to prevent the use of excessive force. Pl.'s Compl. ¶¶ 31, 33; Pl.'s Resp. ¶¶ 19–20. Clearly, Plaintiff is not alleging that the City officially adopted and promulgated any policy which directly resulted in his injuries. Furthermore, Plaintiff does not suggest that any isolated action or decision by a municipal policymaker deprived him of his constitutional rights. Rather, Plaintiff bases his municipal liability claim on the theories that the City maintained a custom or practice of allowing the use of excessive force and that the City failed to train, supervise, or discipline its officers.

### 1. Informal Custom

 A plaintiff may base a § 1983 claim on "constitutional deprivations visited pursuant to governmental 'custom' even though such custom has not received formal approval through the body's official decision making channels." *Monell*, 436 U.S. at 690–91, 98 S.Ct. 2018. Where a

---

**2.** The better practice would be to heed the Fifth Circuit's instruction that "each and any policy which allegedly caused constitutional

violations must be specifically identified by plaintiff." *Piotrowski*, 237 F.3d at 579.

plaintiff bases municipal liability on such a custom, the plaintiff must show that "the relevant practice is so widespread as to have the force of law." *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). Evidence of an isolated incident is insufficient to establish a custom. *Pineda v. City of Houston*, 291 F.3d 325, 329 (5th Cir.2002). Rather, a plaintiff must demonstrate persistent, repeated, constant violations to establish an informal policy. *Piotrowski*, 237 F.3d at 581. Furthermore, "[w]here a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Brown*, 520 U.S. at 405, 117 S.Ct. 1382. Accordingly, in addition to establishing the existence of an informal custom, a plaintiff must also demonstrate that the municipal policymakers are actually or constructively aware of the custom. *Pineda*, 291 F.3d at 330–31. Additionally, a plaintiff must establish that the municipality promulgated the custom with "deliberate indifference to the 'known or obvious consequences' that constitutional violations would result." *Piotrowski*, 237 F.3d at 579 (quoting *Brown*, 520 U.S. at 407, 117 S.Ct. 1382).

█ The only evidence offered by Plaintiff to demonstrate knowledge, deliberate indifference, or the widespread nature of the alleged custom of excessive force is evidence in support of the disputed facts surrounding his arrest and the 104 excessive force complaints filed against the El Paso Police Department ("EPPD") in 2004.[3] Unfortunately for Plaintiff, this evidence is insufficient to survive summary judgment. Evidence of Plaintiff's isolated incident will not support a finding of municipal liability based on informal custom. *See Burge v. St. Tammany Parish*, 336

3. Plaintiff offers the following items of evidence in support of his argument: (1) Plaintiff's deposition testimony that, on the night of his arrest, he voluntarily laid down on the ground and the EPPD officers jumped on him and broke his neck and jaw (Pl.'s Resp. ¶¶ 16–17, Ex. 6); (2) Officer Torres's deposition testimony that Plaintiff fell or collapsed to the ground after which he continued to press Plaintiff to the ground (Pl.'s Resp. ¶ 16, Ex. 9); (3) Eyewitness Sergio Perez's deposition testimony that he believes that a police officer tackled Plaintiff to the ground (Pl.'s Resp. ¶ 26, Ex. 10); (4) Officer Gabriel Zaragosa's deposition testimony that Officer Torres continued to press Plaintiff to the ground (Pl.'s Resp. ¶ 17, Ex. 11); (5) Officers Torres's and Cisneros's interrogatory answers that Plaintiff did not resist arrest (Pl.'s Resp. ¶¶ 19, 24, Exs. 4, 5); (6) Defendants' responses to Plaintiff's request for admissions that Plaintiff did resist arrest (Pl.'s Resp. ¶ 24, Exs. 2, 3); (7) Sergeant Steve Lopez's Internal Affairs witness statement that he inadvertently failed to call a crime scene unit to assist with photographs in violation of official policy (Pl.'s Resp. ¶ 20, Ex. 12); (8) Plaintiff's medical records for treatment for a fractured neck, rib cage, and jaw, as well as injuries to his head and ear (Pl.'s Resp. ¶ 18, Ex. 15); (9) Statements by Plaintiff's treating physicians that his injuries were "rarely" seen and "very unlikely" to have occurred as a result of a fall (Pl.'s Resp. ¶ 30, Ex. 7); (10) Wiles's affidavit statement that "there is no policy, custom or practice of the El Paso Police Department being deliberately indifferent to the citizens of this community or suspects in custody." (Pl.'s Resp ¶ 32, Ex. 1); (11) Exhibits one and two to the deposition of Richard Wiles indicating that 104 excessive force complaints were filed against the EPPD in 2004 (Pl.'s Resp. ¶ 32, Ex. 13); (12) Richard Wiles's deposition testimony that he does not believe that the number of excessive force complaints filed against the EPPD is large when considering the size of the department (Pl.'s Resp. ¶ 32, Ex. 8); (13) Richard Wiles's deposition testimony that he does not personally review every excessive force complaint because he delegates this responsibility to a well-trained and capable staff (Pl.'s Resp. ¶ 34, Ex. 8); and (14) Richard Wiles's answer to Plaintiff's interrogatory that he is the responsible policymaker concerning the amount of force used by the EPPD (Pl.'s Resp. ¶ 36, Ex. 14).

F.3d 363, 371 (5th Cir.2003) (noting that evidence of an isolated occurrence will not support municipal liability predicated on a widespread custom theory). Furthermore, the Court refuses to infer any widespread practice by the City based exclusively on the excessive force complaints filed in 2004.[4]

It is well established that a complaint does not amount to a committed act. *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 384 n. 45 (5th Cir.2005) (noting that the number of complaints does not bear any relation to their ultimate validity). Plaintiff completely fails to inform the Court of the number of claims, if any, which were ultimately substantiated. Plaintiff fails to explain how any one of the 104 complaints is similar to Plaintiff's. Plaintiff fails to provide evidence demonstrating that the number of complaints is disproportionately large for a police force the size of the EPPD. In short, Plaintiff fails to place the 104 complaints in any relevant context from which the Court could conclude that the City knowingly maintained any widespread custom or acted with deliberate indifference to " 'known or obvious consequences' that constitutional violations would result" if it did not alter its conduct. *Piotrowski*, 237 F.3d at 579. Accordingly, the Court cannot infer a widespread custom, assign knowledge of such custom, or attribute deliberate indifference solely based on the circumstances of Plaintiff's arrest and 104 unsubstantiated excessive force complaints. *See Piotrowski*, 237 F.3d at 581 ("A customary

municipal policy cannot ordinarily be inferred from single constitutional violations."); *Pineda*, 291 F.3d at 330 (refusing to impute knowledge to the municipality based on the numerous offense reports collects because this would amount to *respondeat superior*).

*2. Failure to Train* [5]

 To prevail on a failure to train claim, a plaintiff must show "(1) the training or hiring procedures of the municipality's policymaker were inadequate, (2) the municipality's policymaker was deliberately indifferent in adopting the hiring or training policy, and (3) the inadequate hiring or training policy directly caused the plaintiff's injury." *Baker v. Putnal*, 75 F.3d 190, 200 (5th Cir.1996). Importantly, the Fifth Circuit has also stated "that proof of a single violent incident ordinarily is insufficient to hold a municipality liable for inadequate training." *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir.1998) (citation omitted). Rather, a plaintiff "must demonstrate 'at least a pattern of similar incidents in which the citizens were injured ... to establish the official policy requisite to municipal liability under Section 1983.' " *Id.* (citation omitted). However, under the "single incident exception," a single violation of federal rights may be sufficient to hold a municipality liable for inadequate training where there is "proof of the possibility of recurring situations that present an obvious potential for violation of constitutional rights and the need

---

**4.** Plaintiff offers evidence of the number of excessive force complaints filed for the entire year of 2004. However, any complaint filed after the date of Plaintiff's arrest is irrelevant to the issue of the City's knowledge of a policy or custom of allowing excessive force or deliberate indifference to such custom on that date.

**5.** All failure to act claims, such as Plaintiff's failure to train, supervise, and discipline

claims, involve the same basic elements: inadequacy, deliberate indifference, and causation. *See Burge*, 336 F.3d at 370 (relating the aforementioned elements for failure to train or supervise claims); *Piotrowski*, 237 F.3d at 581–82 (reviewing failure to train or investigate claims). Because Plaintiff only makes passing reference to most of these claims, the Court analyzes all of them under the context of Plaintiff's failure to train allegation.

for additional or different police training." *Gabriel v. City of Plano,* 202 F.3d 741, 745 (5th Cir.2000).

■ Plaintiff's inadequate training allegation is wholly unsupported. Plaintiff has not referenced elements or components of the City's training procedures or policies in any meaningful way. He has not pointed out areas in which those policies are deficient or areas in which those policies need revision. If the basis of Plaintiff's claim is that the City failed to train or improperly trained the officers in question, Plaintiff would need to put forth some evidence directly implicating the training they received. "In resolving the issue of a city's liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform." *City of Canton,* 489 U.S. at 390, 109 S.Ct. 1197. Further, "[t]hat a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *Id.* at 390–91, 109 S.Ct. 1197. Nothing Plaintiff provided in opposition to Defendants' Motion addresses the adequacy of the officers training, and Plaintiff's opposition fails to evidence a genuine issue of material fact in this regard.

Accordingly, because Plaintiff has failed to submit any evidence that the City knowingly maintained a widespread custom or practice of allowing or promoting the use of excessive force which it promulgated with deliberate indifference, the Court is of the opinion that summary judgment on the issue of municipal liability is proper.

### B. Qualified Immunity—Richard Wiles in his Individual Capacity [6]

■ Wiles asserts qualified immunity to Plaintiff's claims against him in his individual capacity. Qualified immunity shields public officials from both civil damages and trial "if their actions were objectively reasonable in light of then clearly established law." *Bazan v. Hidalgo County,* 246 F.3d 481, 488 (5th Cir.2001). Once a defendant raises a qualified immunity defense on summary judgment, the plaintiff bears the burden of rebutting that defense. *Id.* at 489.

■ The Court employs a two step process to resolve a qualified immunity defense. First, the Court must determine whether the plaintiff has alleged "the violation of a clearly established Constitutional

---

**6.** Plaintiff asserts that Wiles's qualified immunity defense should be denied as untimely pursuant to Local Rule CV–12. To the extent that Wiles's Motion relies on the qualified immunity defense, it is in technical violation of Local Rule CV–12. However, the apparent purpose of the rule is to ensure that the qualified immunity determination is made "at the earliest possible stage of litigation." *Anderson v. Creighton,* 483 U.S. 635, 646 n. 6, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Plaintiff does not argue that he has been prejudiced by the delay or that he ever prompted Wiles to comply with Local Rule CV–12. *See Chacon v. Hous. Auth. of the City of El Paso,* No. EP–99–CA–410–DB, 2000 WL 33348200, at *6 (W.D.Tex. Oct. 31, 2000) (finding that a defendant did not waive quali-

fied immunity, in part because the plaintiff did not "contend he [had] been prejudiced by any delay and never once prompted Defendant to comply with Local Rule CV–12"). Additionally, Wiles's Answer, filed on January 11, 2005, put Plaintiff on notice that Wiles intended to assert the defense of qualified immunity. *See id.* (noting that the defendant had put the plaintiff on notice that the defendant intended to assert a qualified immunity defense prior to the filing of the defendant's motion for summary judgment). Moreover, the qualified immunity doctrine supports the important policy of "protecting the public by permitting its decision-makers to act without fear of unanticipated personal liability." *Id.* Therefore, the Court finds that Wiles has not waived his qualified immunity.

right." *Siegert v. Gilley*, 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991). A right is "clearly established" only when its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640, 107 S.Ct. 3034; *Foster v. City of Lake Jackson*, 28 F.3d 425, 429 (5th Cir.1994). The second component of a qualified immunity defense requires the Court to determine whether the official's conduct was objectively reasonable, in light of the legal rules clearly established at the time of the alleged violation. *Anderson*, 483 U.S. at 639, 107 S.Ct. 3034. On summary judgment, "the objective reasonableness inquiry is a question of law," which means it "cannot be decided if there are genuine issues of material fact" shaping its resolution. *Bazan*, 246 F.3d at 490 (citations omitted).

 The first requirement for a plaintiff attempting to overcome the bar of qualified immunity is to establish that the defendant violated his rights. Plaintiff alleges violations of his Fourth and Fourteenth Amendment rights to be free from excessive force and constitutionally deficient tactics. Plaintiff seeks to hold Wiles liable for these violations as the ultimate supervisor of Officers Cisneros and Torres. In a § 1983 action, a court cannot hold supervisory officials vicariously liable for the actions of their subordinates. *Oliver v. Scott*, 276 F.3d 736, 743 (5th Cir.2002). Rather, "the misconduct of [a] subordinate must be affirmatively linked to the action or inaction of the supervisor." *Southard v. Tex. Bd. of Criminal Justice*, 114 F.3d 539, 550 (5th Cir.1997). Accordingly, a court will hold supervisory officials liable only if "(i) they affirmatively participate in acts that cause constitutional deprivation; or (ii) implement unconstitutional policies that causally result in plaintiff's injury." *Baker*, 75 F.3d at 199. Furthermore, a plaintiff must demonstrate that the supervisory official acted with deliberate indifference, "which requires proof that the supervisor 'disregarded a known or obvious consequence of his action.' " *Evett v. DETNTFF*, 330 F.3d 681, 689 (5th Cir. 2003) (quoting *Southard*, 114 F.3d at 551).

 The Court concludes that Plaintiff has failed to demonstrate that Wiles violated any of Plaintiff's constitutional rights while acting in his supervisory capacity. The uncontested summary judgment evidence demonstrates that Wiles did not affirmatively participate in Plaintiff's arrest or, by logical extension, any direct use of force against him. Accordingly, for Plaintiff to establish Wiles's liability as a supervisor, he must demonstrate that Wiles acted with deliberate indifference in implementing unconstitutional policies that caused Plaintiff's injuries. Plaintiff asserted nearly all of his claims against Wiles in tandem with his claims against the City. Accordingly, nearly all of Plaintiff's claims against Wiles rely on the same informal custom and "failure to train" evidence that the Court already concluded is insufficient to survive summary judgment.[7] Plaintiff's only argument unique to Wiles is that Wiles is not sufficiently attentive to excessive force complaints filed against the EPPD. However, this evidence fails to demonstrate either that Wiles implemented an unconstitutional policy or that this policy caused Plaintiff's injuries. Plaintiff

---

7. *See* supra Part III.A (discussing summary judgment as to the City and Wiles in his official capacity).

merely avers that Wiles should or could have reviewed every excessive force complaint without explaining why the failure to do so (1) is deficient, (2) disregards a known or obvious negative consequence, or (3) is causally related to his injuries. While the Court must draw all inferences in favor of Plaintiff, the Court cannot create and inject facts where they do not exist in an attempt to sustain Plaintiff's allegations. The lack of any evidence implicating Wiles in the violation of Plaintiff's constitutional rights requires summary judgment on Plaintiff's § 1983 claims against Wiles in his individual capacity and obviates the need for analysis of the other qualified immunity elements.

## IV. CONCLUSION

Based on the foregoing analysis, the Court concludes that Defendants' Motion for Summary Judgement should be granted.

Accordingly, **IT IS ORDERED** that Defendants the City of El Paso and Richard Wiles's Motion for Summary Judgment (Docket No. 18) is **GRANTED**.

**IT IS FURTHER ORDERED** that partial judgment is entered in favor of Defendants the City of El Paso and Richard Wiles, individually and in his official capacity, and against Plaintiff David Snow.