**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

No. 98-10742
_____

SUSIE LEMOINE, on behalf of Andrew Est. of Lemoine,
Individually and as Personal Representative of the Estate
of Andrew Lemoine, Deceased,

Plaintiff-Appellee,

versus

NEW HORIZONS RANCH AND CENTER, INC., ET AL.,

Defendants,

PAUL SCOTT; KELLY HUTCHINSON; and WAYNE HAIRGROVE,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Northern District of Texas

_____

May 12, 1999

Before REYNALDO G. GARZA, STEWART, and PARKER, Circuit Judges.

CARL E. STEWART, Circuit Judge:

Appellants appeal the district court's decisions to deny their motions for summary judgment. The district court denied their claim to qualified immunity because it found that there existed two genuine issues of material fact.  We REVERSE.

**FACTUAL & PROCEDURAL BACKGROUND**

This wrongful death / substantive due process Fourteenth Amendment case focuses upon the 1995 death of Andrew Lemoine ("Andrew"). Andrew, at the age of twelve, died of a heat stroke after being forced to work as part of a behavior modification program in which he moved forty-pound rocks all day outside in temperatures reaching 103 degrees. When he died, Andrew was in the care of a private residential treatment center called New Horizons Ranch and Center ("New Horizons"), and was under the managing conservatorship of the Texas Department of Protective Regulatory Services ("TDPRS"). At the time of his placement at New Horizons, Andrew was receiving a complex regime of anti-psychotic and other psychotropic medicines which, among other side-effects, allegedly made him hyper-sensitive to light and less able to dissipate heat. These drugs also inhibited his body's ability to sweat and made him feel full and less likely to drink water. The essence of the claim underlying the appeal before us is that TDPRS should never have sent Andrew to New Horizons, and that at the very least it should have ensured that Andrew's full medical records were provided to New Horizons.

Andrew's brief life was tragic. Born in 1983, Andrew was two years old when he was taken from his family as a result of severe abuse by his father. Andrew's mother and Plaintiff-appellee, Susie Lemoine ("Ms. Lemoine" or "plaintiff"), also failed to protect him from the abuse and failed to treat him with needed antibiotics. A family court gave TDPRS managing conservatorship over Andrew, but refused to terminate Ms. Lemoine's parental rights.

Because of an existing parental relationship, Andrew could not be placed in an adoptive home. A foster home was also inappropriate because of his severe emotional problems. In 1992, TDPRS placed Andrew in the Buckners Family Center ("Buckners"), a residential treatment center in San

Antonio. Kelly Hutchinson, a social worker from TDPRS and one of the three Defendants-appellants in this case, became Andrew's caseworker.

In 1995, Andrew became an adolescent and could no longer stay at Buckners. Consequently, Hutchinson began the process of finding Andrew a new residential treatment facility. During this process, Hutchinson became an acting supervisor at TDPRS. Paul Scott, the second of the three Defendants-appellants, took Hutchinson's place as Andrew's caseworker. Together, they continued the process of finding a new residential treatment facility center.

This process had eight steps. The parts of that process in controversy in this case are emphasized below:

1. Hutchinson, Scott, Ms. Lemoine, and the family court held a Permanency Planning Team meeting, in which they discussed Andrew's impending move.
2. Scott submitted the "Common Application Form" to a private agency on state contract. The private agency is contractually obliged to determine what level of care a child requires. Andrew was ranked at a level five out of six, with six requiring the most care.
3. Scott obtained a list of acceptable facilities.
4. Hutchinson and Scott selected New Horizons as Andrew's new facility.
5. Scott determined that there were no impending actions against New Horizon's license.
6. Hutchinson and Scott filled out Form 2646 (the "Transfer Evaluation Form"). *TDPRS did not obtain the signature of a Masters of Social Work, which is required for a transfer.*[1]
7. Hutchinson and Scott filled out Forms 2085 and 2085a, in which they gave New Horizons permission to perform medical and dental care for Andrew.
8. Scott and Elisabeth Villareal, Andrew's direct caregiver at Buckners, visited New Horizons for a preplacement visit. Scott and Villareal met with Mike Snider, Admission Director of New Horizons, and Villareal provided Snider with Andrew's most recent physical, psychiatric, and dental evaluations, his medications, his most recent treatment plan, school records, and first-hand information about Andrew's disciplinary and medical history. *Scott did not*

---

[1] We assume for purposes of this appeal only that a signature was required on this Form.

*monitor Buckners to make certain that the facility sent Andrew's complete medical record.*[2]

Thirty-two days after his transfer to New Horizons, Andrew died.

Plaintiff-appellee Ms. Lemoine brought this 42 U.S.C. § 1983 action claiming that Andrew's constitutional rights under the Fourteenth Amendment's substantive due process clause were violated. The action was brought in federal district court against Hutchinson and Scott, the two TDPRS employees who were responsible for Andrew's care and who had directly worked on Andrew's case, as well as TDPRS employee Wayne Hairgrove, Lead Program Director of Child Protective Services in Tarrant County (together "appellants").[3]

Appellants filed motions for summary judgment asserting qualified immunity. The district court denied each motion and explained that there existed two genuine issues of material fact, the first relating to whether the appellants had obtained a signature from a person holding a master's degree in social work approving Andrews' transfer, and the second involving whether the appellants had sent Andrew's complete medical records to New Horizons. This timely appeal followed.

### JURISDICTION

Plaintiff contends we do not have jurisdiction over this appeal because it is nothing more than a sufficiency of the evidence claim, and our appellate jurisdiction does not extend to such issues when

---

[2]We assume for purposes of this appeal only that Andrew's complete medical records were not sent to New Horizons.

[3]Ms. Lemoine also brought suit against New Horizons, nine employees of New Horizons, and Samuel Bradley Miller, a psychiatrist / independent contractor who was working for New Horizons at the time of Andrew's death. The present appeal does not concern these defendants.

they are presented to us on a denial of a motion for summary judgment. Appellants assert, on the other hand, that their appeal is not an argument disputing the district court's view of the facts, but rather a legal claim assuming the facts as the district court saw them. Because we have recently altered the law in this area, we briefly review the pertinent limits to our appellate jurisdiction.

Normally, we do not have appellate jurisdiction to review a district court's denial of a motion for summary judgment because such a motion is not a final one within the meaning of 28 U.S.C. § 1291. An exception to this rule exists when the summary judgment motion is premised on a claim of absolute or qualified immunity. See Mitchell v. Forsyth, 472 U.S. 511 (1985). In such a case, we possess appellate jurisdiction over the interlocutory appeal because the claim in question is separate from the underlying merits of the case and therefore fits within the collateral order exception laid out in Cohen v. Beneficial Inducs. Loan Corp., 337 U.S. 541, 546 (1949). See Colston v. Barnhart, 146 F.3d 282, 284 n.1 (5th Cir.) (denying petition for *en banc* review), cert. denied 119 S.Ct. 618 (1998).

Even in these cases, however, appellate jurisdiction is limited. We have appellate jurisdiction to review the district court's decision denying summary judgment only to the extent it turns on an issue of law. Or said differently, our appellate jurisdiction does not allow us to review that district court's factual findings. It is helpful at this point to realize that when a district court denies a motion for summary judgment on the basis that there exist genuine issues of material fact, the district court is actually making two separate conclusions:

> First, the court has concluded that the issues of fact in question are genuine, i.e., the evidence is sufficient to permit a reasonable factfinder to return a verdict for the nonmoving party. Second, the court has concluded that the issues of fact are material, i.e. resolution of the issues might affect the outcome of the suit under governing law.

See Colston v. Barnhart, 146 F.3d 282 (5th Cir.) (citations omitted), cert. denied 119 S.Ct. 618 (1998). Whether we have appellate jurisdiction turns on which of these conclusions is being challenged on appeal. We do not have appellate jurisdiction over the first type of conclusion because such conclusions are nothing more than a determination of the sufficiency of the evidence – a finding which, in turn, is not truly separable from the underlying claim and is thus not a "final order" under the collateral order doctrine. See id. (citing Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541 (1949)). On the other hand, we do have appellate jurisdiction over the second of these conclusions because it is a legal determination. See id. In conducting this review, we adopt the district court's articulation of the genuinely disputed facts when determining whether these disputes are material to a finding of qualified immunity. See id. at 298 & n.2 (Benavides, J., dissenting) (citing Behrens v. Pelletier, 516 U.S. 299, 313 (1996)). Naturally, our review of the district court's conclusions as to the materiality of the identified fact issues, a legal determination, is *de novo*. See Nerren v. Livingston Police Dept., 86 F.3d 469, 472 (5th Cir. 1996).

Here, the plaintiff argues that we do not have appellate jurisdiction because appellants make nothing more than an attack on the genuineness of the two fact issues identified by the district court. We disagree. Appellants contend that even if the district court's identification of genuine fact issues are correct, these fact issues are immaterial because they do not show that appellants acted with anything more than negligence. As noted earlier, the district court opined that there existed two genuine issues of material fact, the first relating to whether the appellants obtained a signature from a person holding a master's degree in social work approving Andrews' transfer, and the second involving whether the appellants had sent all of Andrew's complete medical records to New Horizons. The crux of appellants' argument is that even if the district court correctly identified the

factual issues above, such factual findings are immaterial because these failures show nothing more than mere negligence. As plaintiff must prove more than negligence to state a constitutional violation, say the appellants, plaintiff cannot make out a legal claim and the district court erred in denying their motions for summary judgment. As the appellants' claim is a legal one, we have appellate jurisdiction over it and proceed accordingly.

## DISCUSSION

In denying each of appellants' motions for summary judgment, the district court held that there existed two genuine issues of material fact as to whether appellants violated Andrew's Fourteenth Amendment right to live in a safe environment. On appeal, appellants attack this conclusion on a variety of fronts, perhaps most importantly by asserting that their actions at most constitute negligence and are therefore insufficient to prove a constitutional violation.

It is well-settled that § 1983 itself contains no state of mind requirement. See Daniels v. Williams, 474 U.S. 327, 329-330 (1986). "But in any given § 1983 suit, the plaintiff must still prove a violation of the underlying constitutional right; and depending on the right, merely negligent conduct may not be enough to state a claim." Id. Here, the district court identified the underlying constitutional right as being the Fourteenth Amendment right to live in a safe environment.[4] The

---

[4]Appellants argue that the district erred by defining the right too broadly. Instead, they suggest that we break the district court's definition into two and label the two parts as the right to have had a complete set of medical records sent and the right to have transfers approved by a physical signature. Unsurprisingly, appellants claim that such rights are not constitutional rights guaranteed by the Due Process Clause, and that even if they are, they are not clearly established so as to give appellants notice. Because we reverse the district court's decision on other grounds, we decline to address whether the district court correctly articulated the right in this case or whether this right is clearly established.

Supreme Court has previously recognized that "negligence on the part of state officials does not suffice to make out *any* due process violation under the Fourteenth Amendment." See Feagley v. Waddil, 868 F.2d 1437, 1440 (5th Cir. 1989) (emphasis added) (citing Daniels, 474 U.S. at 344).

Implicitly recognizing this constitutional minimum, the parties nonetheless disagree as to what state of mind beyond mere negligence is required to show a constitutional violation in this case. Relying on DeShaney v. Winnebago County Dept. of Social Serv., 489 U.S. 189 (1989), appellants argue that "deliberate indifference" is the requisite state of mind for most failure to act cases. On the other hand, plaintiff uses Youngberg v. Romero, 457 U.S. 307 (1982) to bolster her claim that the "professional judgment" test is more appropriate in cases where children, as opposed to prisoners, are the subject of the lawsuit. See id. at 323 ("[L]iability may only be imposed when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment.").

We need not resolve this issue today, however, because we find that the most plaintiff can demonstrate is that the appellants acted negligently. First, the district court found that there existed a genuine issue of material fact as to whether appellants obtained the signature on transfer evaluation Form 2646 of a Masters of Social Work before transferring Andrew from Buckners to New Horizons. Appellants concede that they did not obtain a signature on Form 2646, and assume for purposes of appeal that a signature was required. As appellants point out, however, this fact is immaterial because there is absolutely no summary judgment evidence in the record suggesting that this failure was anything more than an administrative failure. Appellants point to an affidavit by Gwendolyn Brown, a former program director from Unit 14 in Tarrant County and a holder of a Master's degree in Social

Work, in which Ms. Brown explains she gave oral approval to appellant Hutchinson regarding Andrew's transfer from Buckners to New Horizons. Even assuming that appellants should have had Brown physically sign her approval, their failure to do so on its face is nothing more than an oversight. Plaintiff points to nothing in the record that is even remotely to the contrary. As a result, we hold that the first fact issue identified by the district court is immaterial because it is insufficient as a matter of law to demonstrate that appellants acted with anything more than negligence.

Second, the district court found that there existed a genuine issue of material fact as to whether appellants had sent all of Andrew's medical records to New Horizons. Appellants concede for purposes of this argument that they did not ensure that all of Andrew's medical records were in New Horizons' hands in the month Andrew was there before he died. They contend that this fact is immaterial, however, given that they ensured New Horizons had sufficient medical information to properly treat and care for Andrew. Appellants point to an affidavit from Elisabeth Villareal who stated that, at appellant Scott's request, she accompanied Scott to New Horizons on the day Andrew was transferred and met with New Horizons' admissions director for approximately two hours. Villareal explains that during this meeting, almost half of which included Andrew, she not only provided the institution with a copy of Andrew's most recent physical examination, his most recent psychiatric review, his treatment plan from April of that same year and his most recent dental work, she also specifically reviewed Andrew's medications, their side effects and Andrew's need for large amounts of water, as well as explained to the admissions director what disciplinary methods would work with Andrew. Again, plaintiff cannot point to a single fact in the record to counter this. Therefore, even if appellants failed to ensure that all of Andrew's medical records were sent to New Horizons, the fact that some of these records were sent, coupled with the fact that the most recent

and probably most pertinent medical information was delivered to New Horizons, conclusively demonstrate that appellants acted without any lack of professional judgment or with deliberate indifference.

## CONCLUSION

For the reasons set forth above, we REVERSE.