# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-10604

United States Court of Appeals
Fifth Circuit

**FILED**
November 13, 2017

Lyle W. Cayce
Clerk

MICHAEL DAVID MELTON,

> Plaintiff - Appellee,

v.

KELLY D. PHILLIPS,

> Defendant - Appellant.

Appeal from the United States District Court
for the Northern District of Texas

Before STEWART, Chief Judge, and JOLLY, JONES, SMITH, DENNIS, CLEMENT, PRADO, OWEN, ELROD, SOUTHWICK, HAYNES, GRAVES, HIGGINSON, and COSTA, Circuit Judges.

JENNIFER WALKER ELROD, Circuit Judge, joined by STEWART, Chief Judge, JOLLY, JONES, SMITH, CLEMENT, PRADO, OWEN, SOUTHWICK, HAYNES,[*] and HIGGINSON, Circuit Judges:

Michael David Melton alleges that he was arrested in violation of the Fourth Amendment for an assault committed by another man with the same first and last names. He seeks to hold Deputy Kelly Phillips, who took the original incident report, liable for his arrest under 42 U.S.C. § 1983. Deputy Phillips moved for summary judgment in district court, asserting the defense

---

[*] Judge Haynes concurs in the judgment and concurs as to Parts I and II.B only.

No. 15-10604

of qualified immunity. The district court determined that fact issues precluded summary judgment on one of Melton's Section 1983 claims. Because Deputy Phillips is entitled to summary judgment even when construing all the facts in the light most favorable to Melton, we REVERSE the district court's order and RENDER summary judgment on Melton's remaining Section 1983 claim against Deputy Phillips.

I.

In June 2009, Deputy Phillips interviewed an alleged assault victim and filled out an incident report identifying the alleged assailant by the name "Michael David Melton."[1]  After Deputy Phillips submitted the report, an investigator with the Sheriff's Office began investigating the assault. A year later, the alleged victim provided the investigator with a sworn affidavit identifying the alleged assailant as "Mike Melton."  The Hunt County Attorney's Office then filed a complaint against "Michael Melton."  The alleged assailant's first and last names are the only identifying information contained in the complaint, and their accuracy is undisputed.  Four days after the complaint was filed, a Hunt County judge issued a *capias* warrant correctly identifying the assailant as "Michael Melton."[2]  Two years after the judge

---

[1] Melton's briefs argued that the incident report's use of the middle name "David" erroneously identified him as the assailant. However, the record does not show that this information ever made its way to the judge who issued the warrant. As Melton has conceded, the record does not show that the incident report itself was presented to the judge. OA at 41:51–42:11. Moreover, no erroneous information from the report was incorporated into the complaint that was presented to the judge: Melton has conceded that the complaint is accurate. OA at 40:55–41:51.

[2] The record does not contain any document labeled as a warrant application or probable cause affidavit. The warrant appears to have issued based on a complaint filed by an Assistant Hunt County Attorney. However, the briefing by both parties assumes that a complaint that leads to a *capias* warrant is the equivalent of a warrant application for purposes of *Franks v. Delaware*, 438 U.S. 154 (1978), and *Hart v. O'Brien*, 127 F.3d 424 (5th Cir. 1997). We accept their assumption for purposes of deciding this case without reaching the question because the issue has not been briefed, is not disputed by the parties, and would not alter the outcome here.

issued the warrant, Melton was arrested on assault charges and detained for sixteen days before being released on bond. It is undisputed that Deputy Phillips's involvement in the chain of events that led to Melton's May 2012 arrest and detention ended with the incident report in June 2009. *Melton v. Phillips*, 837 F.3d 502, 505 (5th Cir. 2016).

The assault charges against Melton were ultimately dismissed for insufficient evidence. Melton then sued Deputy Phillips under 42 U.S.C. § 1983, alleging that Deputy Phillips was responsible for his arrest under *Franks* and *Hart* because Deputy Phillips included false information in his incident report.[3] Deputy Phillips asserted the affirmative defense of qualified immunity and provided an affidavit stating broadly that the identifying information in the incident report "would have been based solely on what I was told by [the victim]." In his affidavit, Phillips also averred, as is stated in the incident report, that the victim provided the assailant's first name, last name, gender, ethnicity, and date of birth.

Melton responded by alleging that Deputy Phillips did not obtain any identifying information from the victim other than the assailant's first and last names. Melton relied on an affidavit by former Hunt County Patrol Lieutenant Brian Alford for his explanation of how Deputy Phillips obtained the information in the incident report. According to Alford's affidavit, victims generally cannot provide the exact date of birth or driver's license number of an offender who is not a family relation. Therefore, Alford averred that Deputy Phillips must have obtained the information from a database called a P.I.D. used by the Hunt County Sheriff's Office. Alford further stated that Melton

---

[3] Melton also brought numerous state-law claims against Deputy Phillips and a variety of state-law and Section 1983 claims against Hunt County, the Hunt County Sheriff's Department, and the Hunt County Sheriff. However, the only claim at issue in this interlocutory appeal based on qualified immunity is Melton's Section 1983 claim based on *Franks*.

and the true assailant have no identifying characteristics in common other than their first and last names. Accordingly, Alford inferred that Deputy Phillips must have obtained the information in the incident report from the P.I.D. without asking the victim to verify any information other than first and last names. Finally, Alford's affidavit averred that a reasonable officer would not rely on the P.I.D. without verifying additional information beyond first and last names.

The district court determined that Alford's affidavit created a genuine issue of material fact regarding whether Deputy Phillips obtained identifying information from the victim, whether he cross-checked that information against the P.I.D. results, whether he used the P.I.D. system at all, and whether his use of the P.I.D. system was improper. The district court reasoned that these questions were material to recklessness, which is an element of liability under *Franks*. Accordingly, the district court denied Deputy Phillips's motion for summary judgment on qualified immunity with respect to Melton's *Franks*-based Section 1983 claim.[4]

Deputy Phillips appealed the district court's denial of summary judgment. Interlocutory appeal was appropriate in this case because Deputy Phillips had raised the defense of qualified immunity, which is an immunity from suit that must be considered at the earliest possible stage of litigation. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). A divided panel of this court affirmed the district court in part and dismissed the appeal for lack of jurisdiction to the extent it challenged the genuineness of the factual dispute over recklessness. *Melton*, 837 F.3d at 510. The panel majority further held *sua sponte* that, although *Jennings v. Patton*, 644 F.3d 297 (5th Cir. 2011), and

---

[4] The district court granted Deputy Phillips's motion for summary judgment on Melton's Section 1983 claims that were based on the Fifth Amendment, and those claims are not at issue here.

No. 15-10604

*Hampton v. Oktibbeha County Sheriff Department*, 480 F.3d 358 (5th Cir. 2007), "grant[ed] qualified immunity to government officials who neither signed nor drafted warrant applications," these opinions lacked precedential value because, in the panel majority's view, they contradicted this court's earlier decision in *Hart*. *Melton*, 837 F.3d at 509. Accordingly, the panel majority *sua sponte* overruled *Jennings* and *Hampton*. The panel majority also rejected Deputy Phillips's alternative argument that he was entitled to qualified immunity under the independent intermediary doctrine.

The dissenting opinion would have held that the requirement of participation in preparing an application for a warrant in *Jennings* and *Hampton* is consistent with *Hart*'s requirement that information be provided "for use in an affidavit in support of a warrant." *Id.* at 513 (Elrod, J., dissenting). Because there was no evidence that Deputy Phillips provided information for the purpose of having it used in obtaining a warrant, the dissenting opinion would have held that Deputy Phillips was entitled to summary judgment under *Hart*, *Hampton*, and *Jennings*. *Id.* at 511–13. Deputy Phillips petitioned for rehearing *en banc*, and we granted the petition.

II.

"The denial of a motion for summary judgment based on qualified immunity is immediately appealable under the collateral order doctrine to the extent that it turns on an issue of law." *Flores v. City of Palacios*, 381 F.3d 391, 393 (5th Cir. 2004). "Accordingly, we lack jurisdiction to review the *genuineness* of a fact issue but have jurisdiction insofar as the interlocutory appeal challenges the *materiality* of [the] factual issues." *Allen v. Cisneros*, 815 F.3d 239, 244 (5th Cir. 2016). We review the materiality of fact issues *de novo*. *Lemoine v. New Horizons Ranch & Ctr., Inc.*, 174 F.3d 629, 634 (5th Cir. 1999). Where the district court has identified a factual dispute, we ask whether the officer is entitled to summary judgment even assuming the accuracy of the

plaintiff's version of the facts. *Kinney v. Weaver*, 367 F.3d 337, 348 (5th Cir. 2004) (en banc).

"A good-faith assertion of qualified immunity alters the usual summary judgment burden of proof, shifting it to the plaintiff to show that the defense is not available." *King v. Handorf*, 821 F.3d 650, 653 (5th Cir. 2016). To satisfy this burden and overcome qualified immunity, the plaintiff must satisfy a two-prong test. *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc). First, the plaintiff must show "that the official violated a statutory or constitutional right." *Id.* Second, the plaintiff must show that "the right was 'clearly established' at the time of the challenged conduct." *Id.* To avoid summary judgment on qualified immunity, "the plaintiff need not present absolute proof, but must offer more than mere allegations." *King*, 821 F.3d at 654. Because the plaintiff is the non-moving party, we construe all facts and inferences in the light most favorable to the plaintiff. *Mullenix v. Luna*, 136 S. Ct. 305, 307 (2015); *Tolan v. Cotton*, 134 S. Ct. 1861, 1865 (2014).

As explained below, Melton's claim fails under both prongs of the qualified immunity analysis because, even assuming his version of the disputed facts and construing all facts and inferences in his favor, the connection between Deputy Phillips's conduct and Melton's arrest is too attenuated to hold the deputy liable under the rule that we reaffirm today or under any law that was clearly established at the time that Deputy Phillips filled out the incident report.

A.

Melton's argument that Deputy Phillips violated his Fourth Amendment rights is based on the Supreme Court's decision in *Franks* and our subsequent application of *Franks* in *Hart*. The defendant in *Franks* was convicted of sexual assault and sentenced to life imprisonment after the district court denied his motion to suppress evidence that had been seized pursuant to a search

warrant. *Franks*, 438 U.S. at 160. The warrant affidavit in that case stated that the affiant had personally spoken with two individuals who worked at the defendant's place of employment, who had both told him that the defendant often wore clothing that matched the description offered by the victim. *Id.* at 157. At the suppression hearing, the defendant requested the right to call these individuals to testify that they had never spoken personally with the affiant and that if they had spoken to another police officer, any information they would have provided about the defendant would have been "somewhat different" from what was recited in the affidavit. *Id.* at 158. The district court refused to hear testimony on this point and denied the defendant's motion to suppress. *Id.* at 160. The Supreme Court of Delaware affirmed, holding that a defendant may never challenge the veracity of a warrant affidavit. *Id.*

The Supreme Court of the United States reversed, determining that the Fourth Amendment entitles a defendant to a hearing on the veracity of a warrant affidavit if he can make a sufficient preliminary showing that the affiant officer obtained the warrant by recklessly including material falsehoods in a warrant application. *Id.* at 171–72. Particularly relevant to our analysis here, the Supreme Court also observed in a footnote that an officer should not be permitted to "insulate" a deliberate misstatement "merely by relaying it through an officer-affiant personally ignorant of its falsity." *Id.* at 163 n.6.

Our decision in *Hart* applied this principle to allow Section 1983 claims against an officer who "deliberately or recklessly provides false, material information for use in an affidavit in support of [a warrant]." *Hart*, 127 F.3d at 448–49 (citing *Franks*, 438 U.S. at 163 n.6) (holding that assistant county attorney was entitled to qualified immunity because he did not act recklessly when he erroneously told an officer who was filling out a warrant application that the person to be arrested for suspected drug offenses was the wife of a known marijuana cultivator). In *Hampton*, we clarified that the holding in

*Hart* does not extend to officers who neither prepared nor presented the warrant affidavit. *Hampton*, 480 F.3d at 365 (holding that two officers who did not prepare, present, or sign a warrant affidavit were entitled to qualified immunity whereas a third officer who prepared the warrant affidavit could be liable for falsely accusing the plaintiff of resisting another individual's arrest). We reaffirmed this principle in *Jennings*, holding again that an officer enjoys qualified immunity if he does not prepare, present, or sign a warrant application. *Jennings*, 644 F.3d at 300–01 (holding that judge who allegedly fabricated corruption charges was entitled to qualified immunity because there was no evidence that he prepared or presented the warrant application and the independent intermediary doctrine shielded him from liability on other grounds).

The panel opinion treated *Jennings* and *Hampton* as in conflict with *Hart*. *Melton*, 837 F.3d at 509. However, we, like the parties in this case, interpret our precedents to be in one accord. Thus, an officer who has provided information for the purpose of its being included in a warrant application under *Hart* has assisted in preparing the warrant application for purposes of *Jennings* and *Hampton* and may be liable, but an officer who has not provided information for the purpose of its being included in a warrant application may be liable only if he signed or presented the application.

The parties have not asked us to overrule *Jennings* and *Hampton* in favor of a broader rule of liability, and *Franks* counsels against such a course. The Supreme Court expressly stated that the *Franks* rule is a narrow one and that its narrowness reflects six concerns. *Franks*, 438 U.S. at 167. First, a broad Fourth Amendment rule could interfere with criminal convictions and be costly to society. *Id.* at 165–66. Second, a broad rule would have minimal benefit in light of "existing penalties against perjury, including criminal prosecutions, departmental discipline for misconduct, contempt of court, and

civil actions." *Id.* at 166. Third, magistrates have the ability to inquire into the accuracy of an affidavit before a warrant issues, both by questioning the affiant and by summoning others to testify at a warrant proceeding. *Id.* Fourth, "[t]he less final, and less deference paid to, the magistrate's determination of veracity, the less initiative will he use in that task," despite the fact that the magistrate's scrutiny is "the last bulwark preventing any particular invasion of privacy before it happens." *Id.* at 167. Fifth, the proliferation of challenges to the veracity of warrant applications could unduly burden the court system and be abused by defendants as a source of discovery. *Id.* Sixth, a broad rule would be in tension with the fact that "[a]n affidavit may properly be based on hearsay, on fleeting observations, and on tips received from unnamed informants whose identity often will be properly protected from revelation," so that "the accuracy of an affidavit in large part is beyond the control of the affiant." *Id.* Accordingly, in light of the Supreme Court's guidance, we decline to adopt a broad new rule of officer liability *sua sponte*.[5]

---

[5] We observe that none of our sister circuits has applied *Franks* to circumstances in which an officer's connection to the plaintiff's arrest is as attenuated as in this case. *See, e.g.*, *KRL v. Moore*, 384 F.3d 1105, 1118 (9th Cir. 2004) (holding that, "because he had no role in the preparation of the . . . warrant," an officer who was involved at every stage of an investigation was entitled to qualified immunity for material omissions in a warrant application); *see also United States v. Brown*, 631 F.3d 638, 640–42 (3d Cir. 2011) (applying *Franks* where non-affiant helped prepare the warrant affidavit); *Burke v. Town of Walpole*, 405 F.3d 66, 86 (1st Cir. 2005) (applying *Franks* where officer who "was centrally involved in the collection of evidence to be used to secure an arrest warrant" withheld evidence from the affiant); *United States v. Wapnick*, 60 F.3d 948, 950, 955–56 (2d Cir. 1995) (applying *Franks* where non-affiant "knowingly or recklessly made false statements to [the affiant] in connection with [the affiant's] preparation of the affidavit"); *United States v. DeLeon*, 979 F.2d 761, 762–63 (9th Cir. 1992) (applying *Franks* where the affiant was present during the non-affiant investigator's telephone interviews and based same-day affidavit on those interviews); *United States v. Calisto*, 838 F.2d 711, 712–13 (3d Cir. 1988) (applying *Franks* where non-affiant informants provided information regarding a drug investigation to a police officer who then obtained a warrant); *United States v. Pritchard*, 745 F.2d 1112, 1118–19 (7th Cir. 1984) (applying *Franks* where non-affiant provided information to affiant and noting that *Franks* applies "when one government agent deliberately or recklessly misrepresents

No. 15-10604

Because we interpret our precedents to be consistent and do not choose to announce a broad new rule of liability, we apply the requirement that an officer must have assisted in the preparation of, or otherwise presented or signed a warrant application in order to be subject to liability under *Franks*.[6] It is undisputed that Deputy Phillips did not present or sign the complaint on the basis of which the *capias* warrant issued. Thus, Deputy Phillips can be subject to liability only if he helped prepare the complaint by providing information for use in it. *See Jennings*, 644 F.3d at 300–01; *Hampton*, 480 F.3d at 365.

To the extent that *Jennings* or *Hampton* could be read to immunize the provision of information for use in preparing a warrant application, we do not read them that broadly. As explained above, *Franks* liability can reach not only those fully responsible for preparing a warrant application, but also those who "deliberately or recklessly provide[] false, material information for use in an affidavit." *Hart*, 127 F.3d at 448. Likewise, "an officer who makes knowing and intentional *omissions* that result in a warrant being issued without probable cause" is also liable under *Franks*. *Michalik v. Hermann*, 422 F.3d 252, 258 n.5 (5th Cir. 2005) (citing *Hart*, 127 F.3d at 448).

Separate from a *Franks* liability context, an officer could be held liable for a search authorized by a warrant when the affidavit presented to the magistrate was "so lacking in indicia of probable cause as to render official belief in its existence unreasonable." *Malley v. Briggs*, 475 U.S. 335, 344 (1986)

---

information to a second agent, who then innocently includes the misrepresentations in an affidavit"). Moreover, *Hart* fully addresses the panel's concern that an officer might seek to insulate a misstatement "merely by relaying it through an officer-affiant personally ignorant of its falsity" because it applies *Franks* to officers who provide information for use in a warrant application. *See Hart*, 127 F.3d at 448 (citing *Franks*, 438 U.S. at 163 n.6).

[6] As noted above, Melton has not requested a broad new rule but only asserts that Deputy Phillips is liable under our circuit's existing case law.

(citing *United States v. Leon*, 468 U.S. 897, 923 (1984)).  The *Malley* wrong is not the presentment of false evidence, but the obvious failure of accurately presented evidence to support the probable cause required for the issuance of a warrant.  In this situation, we have rightly recognized that liability should attach only to the "affiant and person who actually prepared, or was fully responsible for the preparation of, the warrant application."  *Michalik*, 422 F.3d at 261.  That is because an officer who only provides a portion of the information included in the affidavit has no way of knowing whether the "whole picture" painted by the evidence establishes probable cause.  *Id.*  As discussed above, *Franks* liability—our concern here—addresses the distinct issue of false information in a warrant application.

Here, the fact issue that the district court identified was whether Deputy Phillips used the P.I.D. in an improper way while preparing the incident report.  The district court determined that this fact issue was material to recklessness and that Deputy Phillips's immunity depended on whether he was reckless because, as the district court understood it, *Franks* applies to "any government official who makes a reckless misstatement."  However, even assuming *arguendo* that Deputy Phillips was reckless in completing the incident report,[7] he is still entitled to summary judgment unless there is a question of fact as to whether he assisted in the preparation of the complaint

---

[7] In the alternative, the fact issues identified by the district court are not material to recklessness as defined in *Hart*.  For purposes of liability under *Franks*, *Hart* defined recklessness to require that an officer "in fact entertained serious doubts as to the truth" of the information included in the warrant application.  *Hart*, 127 F.3d at 449.  Even assuming *arguendo* that Alford correctly surmised that Deputy Phillips used the P.I.D. system without having the victim verify any identifying information other than first and last names and that a reasonable officer would not have relied on information so obtained, this would not satisfy the requirement that Deputy Phillips entertained serious doubts as to the truth of the information in the report.  Melton has not pointed to any evidence on this requirement.

No. 15-10604

on the basis of which the *capias* warrant issued. *See Jennings*, 644 F.3d at 300–01; *Hampton*, 480 F.3d at 365.

Melton seeks to create a fact issue as to whether Deputy Phillips helped prepare the complaint by providing information for use in it, asserting that "[a]ny investigator would know" an incident report will be used to obtain a warrant. However, there is no record evidence of a policy or practice at the Hunt County Sheriff's Office that would have allowed Deputy Phillips to anticipate that the incident report would be used to obtain a warrant. *See* OA at 38:25–40:40. Nor, as Melton has conceded, is there record evidence suggesting that Deputy Phillips knew this specific report would be used to obtain a warrant. OA at 38:11–38:23. Moreover, unchecked boxes at the end of the incident report show that Deputy Phillips chose not to file the report with a justice of the peace, a county attorney, or a district attorney. Because the record does not contain evidence that the information in the incident report was provided for the purpose of use in the complaint, Deputy Phillips did not participate in preparing the complaint. *See Hart*, 127 F.3d at 448–49. Accordingly, because he did not assist in preparing, present, or sign the complaint, Deputy Phillips cannot be held liable under *Franks*. *See Jennings*, 644 F.3d at 300–01; *Hampton*, 480 F.3d at 365. Accordingly, Deputy Phillips is entitled to summary judgment on this claim.

B.

Even assuming *arguendo* that Melton could demonstrate that a fact issue exists on his claim that Deputy Phillips recklessly filled out the incident report, Melton bears the burden of demonstrating that Deputy Phillips violated his clearly established rights.[8] *See Morgan*, 659 F.3d at 371. "Abstract or

---

[8] "This circuit follows the rule that alternative holdings are binding precedent and not obiter dictum." *United States v. Potts*, 644 F.3d 233, 237 n.3 (5th Cir. 2011).

general statements of legal principle untethered to analogous or near-analogous facts are not sufficient to establish a right 'clearly' in a given context; rather, the inquiry must focus on whether a right is clearly established as to the specific facts of the case." *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015); *see also Kinney*, 367 F.3d at 350. "Although a case *directly* on point is not necessary, there must be adequate authority at a sufficiently high level of specificity to put a reasonable official on notice that his conduct is definitively unlawful." *Vincent*, 805 F.3d at 547; *see also Kinney*, 367 F.3d at 350.[9] Thus, "[a] clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Luna*, 136 S. Ct. at 308.

Rather than attempting to demonstrate that his rights were clearly established by cases addressing analogous or near-analogous facts, Melton has repeatedly emphasized that the facts of his case are unique. *See, e.g.*, Red Brief at 20; OA at 28:38–29:09; OA at 36:09–37:33; OA at 56:54–57:24. Moreover, Melton conceded at oral argument that he could not identify a single case applying *Franks* to a situation in which there was no error in the complaint and no false statement that made its way into the warrant. OA at 55:26–56:05. Indeed, *Franks* expressly requires a falsehood to be included in the warrant application for there to be a Fourth Amendment violation. *Franks*, 438 U.S. at

---

[9] Although neither Melton nor Deputy Phillips has briefed this prong of the qualified immunity analysis, Deputy Phillips's good-faith assertion of qualified immunity has placed the burden on Melton to demonstrate that neither prong of the defense applies. *King*, 821 F.3d at 653. Moreover, both parties have briefed their understanding of the law that existed at the time Deputy Phillips prepared the incident report, and reaching prong two of qualified immunity does not result in unfair prejudice. It is important to consider the defense at the earliest possible stage of litigation because qualified immunity is an immunity from suit that "is effectively lost if a case is erroneously permitted to go to trial." *Pearson*, 555 U.S. at 231; *see also White v. Pauly*, 137 S. Ct. 548, 551 (2017) (noting that qualified immunity is "important to society as a whole"); *Behrens v. Pelletier*, 516 U.S. 299, 305 (1996) (noting that qualified immunity is "too important to be denied review" on interlocutory appeal).

155–56.  Particularly in light of *Franks*'s detailed discussion of why its rule must be narrowly construed, we cannot say *Franks* clearly established the unconstitutionality of Deputy Phillips's conduct.  *See id.* at 165–67.

Moreover, even if Melton had attempted to satisfy his burden rather than conceding that his case is unique and that no case applies *Franks* in similar circumstances, Melton could not have shown that Deputy Phillips violated his clearly established rights without assisting in preparing, presenting, or signing the complaint.  *Hart* and *Hampton* had been decided at the time Deputy Phillips prepared the incident report.  As discussed above, *Hampton* held that an officer is entitled to qualified immunity if he does not prepare, present, or sign a warrant application.  *Hampton*, 480 F.3d at 365. *Hart* held that an officer is not entitled to qualified immunity if he "deliberately or recklessly provides false, material information *for use in an affidavit in support of [a warrant].*"  *Hart*, 127 F.3d at 448–49 (emphasis added).  Because Melton cannot show that Deputy Phillips prepared, presented, signed, or provided information for use in the complaint, he cannot show that Deputy Phillips violated clearly established law.[10]

## III.

For the reasons explained above, we REVERSE the district court's order and RENDER summary judgment for Deputy Phillips on Melton's claim of liability under *Franks*.

---

[10] Because we decide the case on the grounds explained above, we do not reach Deputy Phillips's additional alternative argument that he is entitled to qualified immunity under the independent intermediary doctrine.

No. 15-10604

GREGG COSTA, Circuit Judge, concurring in the judgment:

There are now so many strands of Fourth Amendment law that it is not surprising they sometimes get tangled.  As Judge Dennis's dissent explains, that is what has happened to our caselaw addressing two different situations in which an officer can be held liable for an unlawful search even when a warrant was obtained.  The first—and the one that is the claim alleged against Phillips—is when an officer provides false information to the magistrate issuing the warrant.  *See Franks v. Delaware*, 438 U.S. 154 (1978).  Because the wrongful act is misleading the magistrate, our original view in this area rightly focused on whether the officer "deliberately or recklessly provides false, material information *for use in an affidavit* in support of a search warrant, regardless of whether he signs the affidavit."  *Hart v. O'Brien*, 127 F.3d 424, 448–49 (5th Cir. 1997) (emphasis added).  As long as the officer knows his false information will be used in an attempt to mislead a magistrate, that officer should be liable under *Franks*.  *See* 438 U.S. at 164 n.6 (explaining that officers should not be able to "insulate one officer's deliberate misstatements merely by relaying it through an officer-affiant personally ignorant of its falsity").

An officer can also be held liable for a search authorized by a warrant when the affidavit presented to the magistrate was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."  *Malley v. Briggs*, 475 U.S. 335, 344 (1986) (citing *United States v. Leon*, 468 U.S. 897, 923 (1984)).  The *Malley* wrong is not the presentment of false evidence, but the obvious failure of accurately presented evidence to support the probable cause required for the issuance of a warrant.  In this situation, we have rightly recognized that liability should attach only to the "affiant and person who actually prepared, or was fully responsible for the preparation of, the warrant application."  *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005).  That is because an officer who only provides a portion of

15

the information included in the affidavit has no way of knowing whether the "whole picture" painted by the evidence establishes probable cause. *Id.* 261.

*Michalik*'s sensible standard for "no probable cause" cases cross-pollinated with the *Franks* line of falsity cases in *Hampton v. Oktibbeha Cty. Sheriff Dep't.*, 480 F.3d 358 (2007). *See Leon*, 468 U.S. at 914–15 (recognizing these as separate doctrines). *Hampton* was a falsity case, yet it readily dismissed claims against two officers who allegedly provided false information that was later presented to the magistrate because neither signed the affidavit or prepared the warrant application. 480 F.3d at 365. Importing the *Michalik* limitation into *Franks* cases and ignoring *Hart* was error. There is no principled reason why *Franks* liability should be limited to the affiant or a person "fully responsible" for preparing the warrant application. *See United States v. Calisto*, 838 F.2d 711, 714 (3d Cir. 1988) ("If we held that the conduct of . . . the affiant[] was the only relevant conduct for the purpose of applying the teachings of *Franks*, we would place the privacy rights protected by that case in serious jeopardy."). That requirement would preclude liability in the case of an officer who provides to a warrant affiant a doctor's inculpatory opinion about bite mark evidence while failing to disclose exculpatory DNA results. *Burke v. Town of Walpole*, 405 F.3d 66, 87 (1st Cir. 2005) (denying qualified immunity on those facts). It would also defeat a claim brought against an officer who conveyed to an affiant the inculpatory comments of one informant but not the contradictory account of another. *United States v. DeLeon*, 979 F.2d 761, 762-63 (9th Cir. 1992). In both of these scenarios, *Hart*'s "for use in an affidavit" standard would support liability.

The majority opinion tries to harmonize *Hart* with *Hampton* (and *Jennings v. Patton*, 644 F.3d 297 (5th Cir. 2011), which followed *Hampton* in a *Franks* case) by saying that "an officer who has provided information for the purpose of its being included in a warrant application under *Hart* has assisted

in preparing the warrant application for purposes of *Jennings* and *Hampton* and may be liable." Maj. Op. at 8. But if *Hart*'s "for use in a warrant" requirement is sufficient, why overlay it with the additional requirements that "an officer must have assisted in the preparation of, or otherwise presented or signed a warrant application in order to be subject to liability under *Franks*"? *Id.* at 10. More problematic than the merged test being cumbersome, the *Hart* standard for *Franks* liability is irreconcilable with *Hampton*'s endorsement of the requirement that the officer must have "prepared or presented the warrant or [have been] *fully responsible* for its preparation or presentation." *Hampton*, 480 F.3d at 365 (quoting *Michalik*, 422 F.3d at 261) (emphasis added); *see also Jennings*, 644 F.3d at 300 (reciting same requirement). That language was wrongly imported from the "no probable cause" caselaw and is not used by any other circuit in *Franks* cases.

The en banc court's attempt to reconcile rather than correct our caselaw, with *Hart* apparently now being a subpart of the *Hampton* standard, will continue to result in confusion. That confusion is especially problematic for a claim in which individuals can assert a qualified immunity defense as a lack of clarity in the law provides a defense. In a future *Franks* case, an officer who provided false information "for use in" an affidavit will no doubt argue he was not "fully responsible" for the warrant application and thus is immune under the *Hampton* and *Jennings* decisions that we reaffirm today.

Such a conflict in the caselaw will support an easy defense of qualified immunity as this case demonstrates. Although the "violation of clearly established law" standard is increasingly being questioned, *see Ziglar v. Abbasi*, 137 S. Ct. 1843, 1870–72 (2017) (Thomas, J., concurring) (citing Baude, *Is Qualified Immunity Unlawful?,* 106 CAL. L. REV. (forthcoming 2018)), it is hard to imagine that any immunity threshold should hold law enforcement to a higher standard than judges when it comes to interpreting the law. If judges

thought (and apparently still think) that the *Michalik* standard should extend to *Franks* cases, then an officer like Phillips who has neither the legal training of judges nor the time we can devote to parsing caselaw should not face civil liability for that error. So I join the majority opinion in concluding that Phillips is immune from this suit.[1]

But I would use the en banc process to recognize the dubious provenance of the "sign or prepare" requirement in our *Franks* case. *Hart* alone should provide the appropriate standard for *Franks* claims. Its "for use in" requirement is more straightforward, consistent with the law in other circuits, and fully captures *Franks*'s concern that an officer's misrepresentations to a court should not be a basis for interfering with citizens' privacy and liberty interests. Our failure to straighten out the strands of Fourth Amendment law that got tangled in *Hampton* means that the next time one of these cases comes along, perhaps with a stronger case for liability than this one, the important Fourth Amendment concerns that *Franks* protects might not be vindicated.

---

[1] The dissent raises legitimate concerns about whether the defendant raised the "clearly established" aspect of qualified immunity as a ground for summary judgment. But even without getting to the "clearly established" question, Melton has not established a constitutional violation under the proper *Franks* inquiry. That is because he cannot show that Phillips knowingly or recklessly presented false information. Assuming the truth of Melton's theory that the inaccurate identification came from Phillips's use of a law enforcement database, there is no evidence indicating that Phillips "entertained serious doubts as to the truth" of that information on which law enforcement frequently relies. *Hart*, 127 F.3d at 449 (quoting *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968)).

No. 15-10604

JAMES L. DENNIS, Circuit Judge, joined by GRAVES, Circuit Judge, dissenting:

The evidence of the nonmovant and the justifiable inferences drawn in his favor by the district court—which we may not second-guess at this interlocutory stage—establish a genuine dispute as to whether Officer Phillips acted with reckless disregard for the truth in falsely identifying the plaintiff as the perpetrator in his official report of a violent assault, resulting in the plaintiff's arrest without probable cause. The majority opinion errs in reversing the district court's denial of qualified immunity and summary judgment to Phillips and causes injustice to the plaintiff, who should be allowed to proceed with his claim, and to future civil plaintiffs and criminal defendants, who will be deprived of a legal remedy for similar violations of their constitutional rights. What makes this case even more significant are the legal and procedural maneuvers this court is employing in order to shield a reckless officer, bending over backwards to revive bad decisions that violated our rule of orderliness and raising arguments and defenses that the appellant did not raise. I respectfully dissent.

**I**

In June 2009, the defendant, Kelly Phillips, then a deputy with the Hunt County, Texas, Sheriff's Office, was dispatched to a hospital in Greenville, Texas, to interview the victim of an assault. The victim told Phillips that the assailant was a man he knew named "Michael Melton." There is no dispute that the assailant was not the plaintiff, Michael David Melton, but a different man, Michael Glenn Melton, who apparently was romantically involved with the victim's estranged wife at the time of the assault. Phillips shortly thereafter prepared an offense report in which he specifically identified the plaintiff, Michael David Melton, as the assailant, and provided his middle name, age, height, hair color, and eye color. As the district court noted, Phillips

19

did not explain how he came to identify the plaintiff, as opposed to the true assailant, as the perpetrator in his report.[1]  According to the plaintiff's expert witness, the only possible way Phillips could have identified the plaintiff falsely as the assailant in his offense report was by entering the name "Michael Melton" into a computer database, the "Personal Identification History through net data" or "PID," without conducting any investigation as to whether the PID-generated result matched the person identified by the victim.

Phillips forwarded his report to the Criminal Investigation Division of the Hunt County Sheriff's Office.  In April 2010, another officer obtained a sworn affidavit from the victim, who again identified his assailant only as "Mike Melton," his estranged wife's boyfriend.  In July 2010, the state prosecutor filed a criminal complaint against the plaintiff, charging him with the assault.  The complaint expressly stated that it was "based upon the observations of K. Phillips, a peace officer, obtained by reviewing said officer's report," and it provided no other basis for the information contained therein.  Shortly thereafter, a Hunt County judge issued a warrant for the plaintiff's arrest.  The plaintiff was arrested in May 2012 and held in county jail for sixteen days before he was released on bond.  In August 2012, the charge against the plaintiff was dismissed.

The plaintiff sued Phillips for violation of his Fourth Amendment rights, alleging that Phillips intentionally or with reckless disregard for the truth misidentified him as the assailant in his offense report, thereby leading to his arrest without probable cause.  Phillips moved for summary judgment,

---

[1] Phillips' affidavit asserts only that, "[a]s standard practice," the identity of the suspect in his report "would have been" based on what he was told by the victim, but he does not actually contend that the victim gave him the plaintiff's middle name or physical description, or that the victim even knew the plaintiff, let alone explain how or why the victim would have given Phillips the plaintiff's information instead of the information of the actual assailant, who was known to the victim.

asserting qualified immunity. The district court denied summary judgment on the plaintiff's Fourth Amendment claims, finding a genuine dispute of fact regarding whether Phillips was reckless in identifying the plaintiff in his offense report.

## II

## A

This court has recognized two different kinds of claims against government agents for alleged Fourth Amendment violations in connection with a search or arrest warrant: (1) claims under *Franks v. Delaware*, 438 U.S. 154 (1978), for which the agent may be liable if he "makes a false statement knowingly and intentionally, or with reckless disregard for the truth that results in a warrant being issued without probable cause," *Michalik v. Hermann*, 422 F.3d 252, 258 n.5 (5th Cir. 2005) (discussing *Franks*, 438 U.S. at 155–56); and (2) claims under *Malley v. Briggs*, 475 U.S. 335 (1986), for which the agent may be liable if he "fil[es] an application for an arrest warrant without probable cause" and "a reasonable well-trained officer . . . would have known that [the] affidavit failed to establish probable cause," *Michalik*, 422 F.3d at 259–60 (citations and internal quotation marks omitted).

As is apparent, these two kinds of claims involve very different legal theories, and our controlling caselaw properly reflects our understanding of those differences. In *Hart v. O'Brien*, 127 F.3d 424, 448–49 (5th Cir. 1997), this court considered the scope of a government agent's liability for *Franks* claims and held, "A governmental official violates the Fourth Amendment when he deliberately or recklessly provides false, material information for use in an affidavit in support of a . . . warrant." And in *Michalik*, we considered the scope of a government agent's liability for *Malley* claims. We held that, in that context, only the "affiant and person who actually prepared, or was fully

responsible for the preparation of, the warrant application" may be liable for seeking a warrant without probable cause. *Michalik*, 422 F.3d at 261.

These different rules make sense. A government official who merely provides information that is later included in a warrant application is not in a position to "see the whole picture" and thus to fully "assess probable cause questions" relevant to *Malley* claims of facially insufficient warrant applications. *See Michalik,* 422 F.3d at 261. By contrast, an officer who "deliberately or recklessly provides false, material information for use in an affidavit" is certainly in a position to fully assess his own conduct, which forms the entire basis for *Franks* claims of material misrepresentations in warrant applications. *See Hart*, 127 F.3d at 448–49. At issue in this case is a *Franks* claim alleging a Fourth Amendment violation resulting from material misrepresentations in a warrant affidavit; thus, as the prudent reader will easily recognize, this claim is controlled by *Hart/Franks*, and the *Michalik/Malley* rule is inapplicable.

**B**

In *Hampton v. Oktibbeha County Sheriff's Department*, 480 F.3d 358, 365 (5th Cir. 2007), and *Jennings v. Patton*, 644 F.3d 297, 301 (5th Cir. 2011), this court confused the two theories described above and, in conflict with our earlier holding in *Hart*, erroneously applied the *Michalik/Malley* rule to cases involving *Franks* misrepresentation claims. And it did so without ever mentioning *Franks* or *Hart*. Under our rule of orderliness, when such conflict occurs, the earlier precedent controls and subsequent, inconsistent cases are disregarded. *See, e.g.*, *United States v. Puckett*, 505 F.3d 377, 385 (5th Cir. 2007) ("A handful of this court's cases, unfortunately, are inconsistent" with earlier precedent, and they are therefore "not controlling"). The en banc court now cements our confusion and error in *Hampton* and *Jennings* into law.

22

In an attempt to portray *Hampton* and *Jennings* as consistent with *Hart*, the majority opinion misrepresents those cases and their holdings.  Under *Hampton* and *Jennings*, a government official who deliberately provides false, material information for use in an affidavit does not violate the Fourth Amendment if she is not the affiant and does not actually prepare the warrant. *See Hampton*, 480 F.3d at 365; *Jennings*, 644 F.3d at 301.  This rule is plainly inconsistent with our earlier holding in *Hart*.

In *Hampton*, the court "accepted the plaintiff's version of the facts, namely that the officers 'conspired to submit false and incomplete information in order to secure a warrant for the arrest of [Hampton].'"  480 F.3d at 364 (alteration in original).  Nevertheless, the *Hampton* court held that these officials could not be held liable because the plaintiff did not allege that either of them "was the affiant officer or the 'officer who actually prepare[d] the warrant application with knowledge that a warrant would be based solely on the document prepared.'"  480 F.3d at 365 (quoting *Michalik*, 422 F.3d at 261).

*Jennings* offers the same "actual preparation" requirement.  In granting qualified immunity to the relevant government official there, the court quoted the following language from *Michalik*:

> Although issues of fact may exist as to the roles that [defendants] played in the investigation, *and in providing some of the information to [the affiant]*, these issues of fact are not material to the [claim for causing a warrant to be issued without probable cause] because none of the evidence suggests that [defendants] prepared or presented the warrant or were fully responsible for its preparation or presentation.

*Jennings*, 644 F.3d at 301 (emphasis added) (alteration in original) (quoting *Michalik*, 422 F.3d at 261).  The *Jennings* court went on to cite *Hampton* and describe it as "granting qualified immunity to defendants who

were neither *the affiant* nor the person who *actually prepared* the warrant application." *Jennings*, 644 F.3d at 301 (emphasis added) (citing *Hampton*, 480 F.3d at 364-65). This, too, is plainly inconsistent with *Hart*.

There is no way to explain how the language of these two cases and their reliance on *Michalik* could be consistent with *Hart*. So the majority opinion does not quote or otherwise discuss their language and does not even mention their reliance on *Michalik*. The majority opinion's attempt to argue that *Hampton* and *Jennings* can be harmonized with *Hart* amounts to an endeavor to square the circle.

## C

The majority opinion's holding that an officer who makes a deliberate or reckless misrepresentation can only be held liable if he "assisted in the preparation of, or otherwise presented or signed a warrant application" is unsound and, unsurprisingly, is not the law in any other circuit.[2] *See, e.g.*, *United States v. Kennedy*, 131 F.3d 1371, 1376 (10th Cir. 1997) (Fourth Amendment violated by false statements "made not only by the affiant but also [by] statements made by other government employees . . . insofar as such statements were relied upon by the affiant in making the affidavit"); *United States v. DeLeon*, 979 F.2d 761, 764 (9th Cir. 1992) ("[W]e join the Third and Seventh Circuits in holding that misstatements or omissions of government officials which are incorporated in an affidavit for a search warrant are

---

[2] The majority opinion cites *KRL v. Moore*, 384 F.3d 1105, 1118 (9th Cir. 2004), as "holding that 'because he had no role in the preparation of the . . . warrant,' an officer who was involved at every stage of an investigation was entitled to qualified immunity for material omissions in a warrant application." Maj. Op. at 9 n.5. This misrepresents *Moore*'s holding. In *Moore*, the plaintiffs challenged the omission of information that was known to those who drafted and signed the affidavit. 384 F.3d at 1117. Thus, the official in question, an investigator who was not involved in the preparation of the affidavit, bore no responsibility for the misleading omission of any information from the affidavit. *See id.* at 1108–09, 1118. By contrast, in the instant case, there is no dispute that Phillips was the source of the material misrepresentations provided to the affiant.

grounds for a *Franks* hearing."). *Cf. United States v. Leon*, 468 U.S. 897, 923 n.24 (1984) (admonishing that in applying the good-faith exception "[i]t is necessary to consider the objective reasonableness . . . of the officers who originally obtained [the warrant] or who provided information material to the probable-cause determination").

The following cases further illustrate the majority opinion's departure from the holdings of our sister circuits. In *United States v. Calisto*, 838 F.2d 711, 712 (3d Cir. 1988), an officer relayed information to a second officer at a second agency. The first officer's "reason for relaying the information to [the second officer] . . . was his belief that it would aid [that officer] *in his investigation.*" *Id.* (emphasis added). The first officer requested not to be revealed as the source of the information. *Id.* The second officer then relayed the information to a third officer at a third agency, who then relayed information to a fourth officer at a fourth agency, who then drafted and signed a warrant application based on the information. In applying *Franks*, the Third Circuit considered the information provided, and omitted, by all four agents, ultimately concluding that any misrepresentation was not material. *See* 838 F.2d at 714–15 & n.2.

In *United States v. Davis*, 471 F.3d 938, 942 (8th Cir. 2006), an officer who conducted a protective sweep relayed false information to another officer who participated in the sweep, and the latter officer relayed that information to the affiant. Nothing in the facts or the court's discussion suggests that the misrepresenting officer was "involved in the preparation" of the warrant affidavit, and the court concluded that his misrepresentation was reckless. *Id.* at 946. The court stated, "The fact that the affiant . . . was not aware [of the falsity] does not change the result under *Franks*, nor does the fact that [the affiant's] source of information . . . was also unaware of the truth. [The recklessly misrepresenting officer's] statement cannot be insulated from a

*Franks* challenge simply because it was relayed through two officers who were both unaware of the truth." *Id.* at 947 n.6.

In *United States v. Lakoskey*, 462 F.3d 965 (8th Cir. 2006), the court considered alleged misrepresentations by an Arizona-based postal inspector, Hirose, in an email to a Minnesota-based inspector, Nichols. The email informed Nichols that a Minnesota resident was apparently involved in a drug trafficking operation using the mails. *Id.* at 970. Only after this email was received, Nichols launched an investigation, which included multiple dog sniffs, and, over two weeks later, applied for and obtained a search warrant based in part on the information relayed in the email. *Id.* at 970–71. Nothing in the facts or in the court's discussion suggests that Hirose was "involved in the preparation" of the warrant affidavit or intended for the information to be used in an affidavit. Nonetheless, the court recognized that misrepresentations by Hirose could give rise to a *Franks* claim, *see id.* at 978, though it ultimately concluded that the misrepresentations were not material, *id.*

Our sister circuits' caselaw reflects a common-sense understanding: when an officer, acting with reckless disregard for the truth, includes false, material information in an official report for further official use, leading to an unlawful search or arrest of an innocent person, there is no justification to insulate him from liability. A reasonable officer can certainly foresee that such actions could lead to an unlawful search or arrest, as information relayed in law enforcement agents' reports routinely end up as support for warrant applications even if the reports are not expressly designed exclusively for that use. *See, e.g., Calisto*, 838 F.2d at 712; *Davis*, 471 F.3d at 942; *Lakoskey*, 462 F.3d at 970–71. Nor does the passage of time between the false report and the warrant application justify ignoring that officer's conduct. Whether the false information is used within a week or a year is not within the misrepresenting

officer's control—the majority opinion offers no basis for the proposition that the existence of a constitutional violation depends on the passage of time between the reckless misrepresentation and the resulting unlawful arrest. There is thus no justification for the anomalous shield that this court has now created.

It is important to emphasize that the majority opinion's erroneous holding that only an officer who actually participates in preparing the warrant affidavit can violate the Fourth Amendment through his reckless or intentional misrepresentations is not limited to civil cases; that narrow reading of the Fourth Amendment will limit criminal defendants' ability to challenge search warrants that are premised on fraudulent misrepresentations. Say, for example, that a patrol officer intentionally alters an assault victim's statement in his police report with the intent to lead detectives to an individual the officer believes committed the crime. And say that this misrepresentation is later included in a search warrant, leading to the recovery of evidence that this individual possessed small amounts of marijuana in his home. Under the majority opinion's holding, that individual would not be able to challenge his search warrant in his ensuing prosecution for possession of a controlled substance simply because the culprit officer did not "participate" in the preparation of the warrant affidavit, notwithstanding his intentional misrepresentation. Such a rule is untenable.

## III

In addition to establishing an imprudent and unfounded rule of law, the court makes serious procedural missteps. On appeal from the denial of a motion for summary judgment based on qualified immunity, this court "lack[s] jurisdiction to review the genuineness of a fact issue." *Allen v. Cisneros*, 815 F.3d 239, 244 (5th Cir. 2016). We have jurisdiction to review only the materiality of the factual issues. *See id.* In this case, the district court found

that the plaintiff "has introduced evidence suggesting that Phillips's identification of [the plaintiff] in his incident report was reckless." The majority opinion acknowledges that recklessness is a question of fact, but in the same breath, it concludes that the facts identified by the district court are not "material" to recklessness. Maj. Op. at 11 n.8. In actuality, the majority opinion simply overrules the district court's determination that there is a genuine dispute as to whether Phillips "in fact entertained serious doubts as to the truth of the information included in the warrant application," *Hart*, 127 F.3d at 449, and by so doing exceeds this court's jurisdiction.[3]

The majority proceeds to absolve Phillips on the additional basis that, even if he did violate the plaintiff's constitutional rights, those rights were not "clearly established." Phillips never made such an argument—not before the district court, not in his brief on appeal, and not in his supplemental en banc brief. The majority opinion states that Phillips's assertion of qualified immunity below "placed the burden on Melton to demonstrate that neither prong of the defense applies." Maj. Op. at 13 n.10. But it is the appellant's burden to show that the district court erred. *See Santillana v. Williams*, 599 F.2d 634, 635 (5th Cir. 1979) ("The burden of appellant on appeal is to persuade the appellate court that the trial judge committed an error of law."); *Vetter v. Frosch*, 599 F.2d 630, 633 (5th Cir. 1979) ("The appellant has the burden of persuading the appellate court that the district court erred."); *Murphy v. St.*

---

[3] The district court's conclusion was also correct. The plaintiff's expert witness averred that Phillips simply entered the name "Michael Melton" into a computer database and used the result of his search to identify the plaintiff in his report, without making any attempt to corroborate that he was the right "Michael Melton." A reasonable juror certainly could conclude based on these facts that Phillips entertained doubts as to the truth of his report. As previously discussed, Phillips could reasonably expect his false report to be used in support of a warrant application, and his false report in fact led to the plaintiff's wrongful arrest. In my view, this is sufficient to establish a genuine dispute as to whether Phillips violated the plaintiff's constitutional rights.

No. 15-10604

*Paul Fire & Marine Ins. Co.*, 314 F.2d 30, 31 (5th Cir. 1963) ("It is elementary instead that the burden is on the appellants to show error."). It is not appropriate for the court to attempt to shoulder this burden on Phillips's behalf.

The majority opinion proceeds to assert on Phillips's behalf that the complaint contained no false information, Maj. Op. at 13, even though Phillips never argued before the district court or before the panel on appeal that his false identification of the plaintiff as the assailant in his report did not result in the plaintiff's wrongful arrest or that the complaint did not falsely identify the plaintiff as the suspected assailant based on his report. Phillips has therefore forfeited these arguments that the majority opinion attempts to raise for him. *See, e.g.*, *Jefferson Cmty. Health Care Ctrs., Inc. v. Jefferson Par. Gov't*, 849 F.3d 615, 626 (5th Cir. 2017) (citing *In re Paige*, 610 F.3d 865, 871 (5th Cir. 2010)) ("[T]his court generally does not consider arguments raised for the first time on appeal."); *United States v. Brace*, 145 F.3d 247, 261 (5th Cir. 1998) (en banc) (holding that the en banc court cannot address an issue that was not presented to the panel on appeal and stating, "It bears repeating—indeed, cannot be overemphasized—that we do not address issues not presented to us.").

Pro se litigants could only dream of receiving the judicial help that the en banc court is giving an officer represented by a highly competent attorney. *See, e.g.*, *Mapes v. Bishop*, 541 F.3d 582, 584 (5th Cir. 2008) ("Although pro se briefs are afforded liberal construction, even pro se litigants must brief arguments in order to preserve them." (citation omitted)). This court's zeal to protect officers from the prospect of chilling liability cannot justify abandoning our rules and reversing the district court's judgment on the basis of arguments that the appellant has not made.

No. 15-10604

\*

Because I believe that the majority opinion errs in reversing the district court's denial of qualified immunity, I respectfully dissent.